(843 P.2d 741)

No. 67,818

DOUBLE S, INC., *Appellee,* v. NORTHWEST KANSAS PRODUCTION CREDIT ASSOCIATION, *Appellant.*

Opinion filed December 18, 1992.

*F. L. McGinley,* of Goodland, for appellant.

*Allen Shelton,* of Clark, Shelton & Pratt, P.A., of Hill City, for appellee.

Before BRAZIL, P.J., PIERRON, J., and STEVEN R. BECKER, District Judge, assigned.

BECKER, J.: Northwest Kansas Production Credit Association (NWK) appeals the district court's decision enforcing an artisan's lien in favor of Double S, Inc., (Double S) against two pieces of farm equipment sold by NWK at a foreclosure sale. NWK contends the administration of the oath as part of the lien statement did not meet statutory requirements. We affirm.

NWK held a security interest in two tractors owned by a farm management company. Double S leased the two tractors and repaired them while the tractors were in its possession. Those repairs are the basis of the artisan's lien.

Double S surrendered possession of the tractors to NWK and filed its lien statement within 90 days. The tractors were sold at a sheriff's sale, foreclosing on NWK's security interest. NWK was informed of the lien prior to the sheriff's sale. The district court granted summary judgment in favor of Double S.

NWK first contends that the lien statement filed by the president of Double S was not given under oath as required by K.S.A. 1991 Supp. 58-201 because the statement was limited to the affiant's knowledge and belief.

Double S's lien statement contained the following qualified acknowledgment: "I, Kevin L. Stoppel, President of Double S Inc., being first duly sworn, upon oath say that I am the above named claimant within named; that the within statement of lien is true and correct, to the best of my knowledge and belief." NWK argues that, because Stoppel stated the statement was true "to the best of my knowledge and belief," the certification was qualified and, therefore, not given under oath.

K.S.A. 1991 Supp. 58-201 provides:

"If such property shall come into the lien claimant's possession for the purpose of having the work, repairs or improvements made or the equipment replaced, added or installed thereon, such lien shall be valid as long as the lien claimant retains possession of the property, and the claimant of the lien may retain the same after parting with the possession of the property by filing within 90 days in the office of the register of deeds, under oath, a statement of the items of the account and a description of the property on which the lien is claimed, with the name of the owner thereof, in the county where the work was performed and in the county of the residence of the owner, if such is known to the claimant."

NWK argues that the requirement in this statute that the lien statement be made "under oath" should be interpreted the same as the requirement for verification in K.S.A. 60-1102, governing mechanics' liens, and K.S.A. 55-209, governing mechanics' liens in oil and gas cases. NWK extends the argument to conclude that the present lien statement is invalid because this court has concluded that similar qualifying language invalidated the verification required by these two statutes. *Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 102, 692 P.2d 397 (1984) (applying verification required by K.S.A. 60-1102), and *DaMac Drilling, Inc. v. Shoemake*, 11 Kan. App. 2d 38, 42-44, 713 P.2d

480 (1986) (applying the verification requirement of K.S.A. 55-209).

Verification has been defined as "an affidavit attached to a statement as to the truth of the matters therein set forth." *D. J. Fair Lumber Co. v. Karlin*, 199 Kan. 366, 369, 430 P.2d 222 (1967); and *Trane Co. v. Bakkalapulo*, 234 Kan. 348, 352, 672 P.2d 586 (1983). This court defined an oath in the context of the mechanic's lien statute as

" 'a declaration or promise made by calling on God to witness what is said.' [Citation omitted.] Oath is also defined as '[a]ny form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully' and as '[a]n affirmation of truth of a statement, which renders one willfully asserting untrue statements punishable for perjury.' " *Kansas Lumber Co. v. Wang*, 12 Kan. App. 2d 20, 23, 733 P.2d 1266 (1987).

K.S.A. 1991 Supp. 21-3805 defines perjury as "willfully, knowingly and falsely swearing, testifying, affirming, declaring or subscribing to any material fact upon any oath or affirmation legally administered in any cause, matter or proceeding before any court, tribunal, public body, notary public or other officer authorized to administer oaths."

The difference in these definitions suggests that a verification is a type of statement given under oath where the declarant must not only refrain from making a knowingly false statement, but he must also have affirmative knowledge of the statement's truthfulness. This conclusion is consistent with the approach taken by the Kansas Supreme Court in *State v. Kemp*, 137 Kan. 290, 20 P.2d 499 (1933). In *Kemp*, R.S. 1923, 60-734 required pleadings to be verified by an affidavit. R.S. 1923, 60-732 provided: " 'The affidavit shall be sufficient if it states that the affiant believes the facts stated in the pleading to be true.' " 137 Kan. at 293. The defendant Kemp was convicted of perjury for false statements that were asserted in his answer in a mortgage foreclosure case. Kemp contended that he was not under oath because the verifying affidavit concluded that the statements were true " 'according to his best knowledge and belief.' " 137 Kan. at 291. The court interpreted the statement to mean that the defendant believed the facts stated in the pleading were true and concluded that the defendant could be subjected to perjury, although the statement

was based merely on belief rather than upon specific knowledge of the underlying facts. 137 Kan. at 293-94.

K.S.A. 1991 Supp. 58-201 does not require the lien statement to be verified. Double S's statement was given under oath as required by the statute, although it was based merely on the declarant's belief and knowledge without asserting that the declarant had actual knowledge of the underlying facts. To conclude otherwise would read a requirement of verification into K.S.A. 1991 Supp. 58-201 that is not present.

Based on the plain language of the statute, K.S.A. 1991 Supp. 58-201 does not require verification, and this court will not impose that requirement on the parties. The lien statement was given under oath, although the qualifying language that it was based only on declarant's knowledge and belief prevented it from being verified.

NWK next contends Kevin Stoppel, the president of Double S, failed to comply with the formalities of K.S.A. 54-102 and K.S.A. 54-104 when executing the oath and, therefore, the lien is defective.

At the hearing on Double S's motion for summary judgment, Stoppel admitted that he did not comply with the statutory formalities of K.S.A. 54-102 and K.S.A. 54-104 for executing an oath. Stoppel stated that his attorney explained that Stoppel had to verify that the statements in the lien were true and that he was under oath. Stoppel also stated that he understood that he was under oath as if he were on the witness stand.

The parties cite two different lines of cases to support their conflicting conclusions. NWK relies upon a series of driver's license revocation cases culminating in *Dewey v. Kansas Dept. of Revenue*, 11 Kan. App. 2d 72, 713 P.2d 490 (1986). Prior to 1985, K.S.A. 8-1001 required an officer to make a report "verified on oath" to the Division of Vehicles if a person refused to submit to a breath or blood alcohol test. K.S.A. 8-1001(c) (Ensley). In 1985, the legislature deleted this section from K.S.A. 8-1001 (L. 1985, ch. 48, § 3), and enacted K.S.A. 1985 Supp. 8-1002(c)(2), which provided that certification could be accomplished by merely signing the report without any acts of oath, affirmation, acknowledgment, or execution. L. 1985, ch. 50, § 2. This provision is currently found in K.S.A. 8-1002(b). In *Dewey*, this court relied

upon this statutory change to conclude that prior to 1985 the officer's certification was insufficient if the officer did not comply with the statutory formalities of K.S.A. 54-101 *et seq.* when executing the oath. 11 Kan. App. 2d at 74.

Double S relies on a series of perjury cases stemming from *State v. Kemp*, 137 Kan. 290. In *Kemp*, the court concluded that the defendant could be charged with perjury for statements contained in an affidavit verifying pleadings even though the defendant did not comply with the statutory formalities of R.S. 1923, 54-102 and R.S. 1923, 54-104 when executing the oath. In its conclusions, the court stated:

"The notary had before him the certificate to be executed, which if executed would declare Kemp was sworn. The notary executed the certificate. Manifestly, both parties intended that out of Kemp's visit to the notary there should come what would have the effect of administration of an oath; and the court holds that in the absence of clear proof the ceremony, or lack of ceremony, was designed by the participants to leave Kemp unsworn, the legal effect of what occurred was the same as if Kemp was sworn according to formalities prescribed for administration of an oath." 137 Kan. at 292-93.

This language has been followed in *State v. Seven Slot Machines*, 203 Kan. 833, 457 P.2d 97 (1969), *cert. denied* 396 U.S. 1037 (1970), and *State v. Anderson*, 178 Kan. 322, 285 P.2d 1073 (1955). Following these cases, because the lien statement was notarized and Stoppel signed it under oath, it should be considered as having been given under oath unless it is proven that the lack of ceremony was intended to leave Stoppel unsworn.

It should be noted that in 1989, after the lien statement in this case was signed, the legislature enacted K.S.A. 1991 Supp. 53-601, which allows a statement subscribed by the person as true under the penalty of perjury to have the same force and effect as a sworn written declaration, verification, certificate, statement, oath, or affidavit. L. 1989, ch. 93, § 1. The legislature's intent in enacting K.S.A. 1991 Supp. 53-601 in 1989 was to codify the ruling of *State v. Kemp*. K.S.A. 1991 Supp. 53-601(c) specifically provides that notarial acts performed prior to the effective date of this statute shall not be affected by the statute.

Notwithstanding the provisions of subsection (c), the same result is reached in this case because the notarial acts are controlled

by the principle set forth in *Kemp*, which existed at the time the lien was executed.

Stoppel testified that, when he executed the lien statement, he understood the statement was true and understood that he was under oath. The lien statement is valid notwithstanding the absence of the statutory formalities.

Affirmed.