No. 94,033

THOMAS J.G. MARTIN, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant*.

(176 P.3d 938)

Opinion filed February 1, 2008.

*John D. Shultz*, of Kansas Department of Revenue, argued the cause, and *James G. Keller*, was with him on the briefs for appellant.

*Michael A. Millett*, of Law Offices of Michael A. Millett, P.A., of Overland Park, argued the cause and was on the brief for appellee.

*Douglas E. Wells*, of Topeka, was on the brief for *amicus curiae* Kansas Association of Criminal Defense Lawyers.

The opinion of the court was delivered by

BEIER, J.: This case addresses whether, when, and to what effect a Kansas driver may contest an alcohol- and/or drug-based administrative license suspension arising out of a law enforcement traffic stop allegedly violating the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of rights.

### Factual and Procedural Background

This case began when plaintiff Thomas J.G. Martin was pulled over by Officer Christopher Wilson of the Prairie Village Police Department in August 2002. The parties have stipulated that Mar-

tin was under the influence at the time, but there had been nothing about Martin's driving that alerted the officer to this fact. Rather, Wilson stopped Martin because of a malfunctioning rear brake light. At the time, Wilson believed the malfunctioning light to be in violation of the law, even though two other rear brake lights on Martin's vehicle were working.

After the stop, Wilson became suspicious that Martin had been drinking. Martin failed field sobriety tests, refused a preliminary breath test, and later failed a chemical breath test at the police station. The chemical breath test result led Kansas Department of Revenue (Department) to suspend Martin's driver's license. Notes from Martin's administrative hearing on the suspension show that Martin attempted unsuccessfully to argue the unconstitutionality of the traffic stop before the Department.

Martin sought review in the district court, where the judge reversed the license suspension, holding that Wilson misinterpreted the law governing brake lights and that this misinterpretation meant he lacked reasonable suspicion to initiate Martin's stop.

A panel of our Court of Appeals overturned the district court decision, agreeing with the Department that the propriety of a traffic stop is irrelevant in a driver's license suspension hearing. *Martin v. Kansas Dept. of Revenue*, 36 Kan. App. 2d 561, 567, 142 P.3d 735 (2006). The panel focused on the fundamental differences between such an administrative proceeding and a criminal prosecution, noting in particular that the purpose of the former is remedial and the latter, punishment. 36 Kan. App. 2d at 564-65 (citing *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 457, 980 P.2d 1022 [1999]; *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 188, 959 P.2d 940, *rev. denied* 265 Kan. 885 [1998]).

The panel then turned to the language of K.S.A. 8-1020(h)(2), evaluating it "[a]gainst this backdrop." 36 Kan. App. 2d at 565. This portion of the statute reads:

"If the officer certifies that the person failed a breath test, the scope of the hearing shall be limited to whether:

(A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, or

had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system;

(B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;

(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;

(D) the testing equipment used was certified by the Kansas department of health and environment;

(E) the person who operated the testing equipment was certified by the Kansas department of health and environment;

(F) the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment;

(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's breath; and

(H) the person was operating or attempting to operate a vehicle." K.S.A. 8-1020(h)(2).

The panel concluded that this list clearly and unambiguously expresses the legislature's intention to limit the issues that can be raised at an administrative license suspension hearing. Had the legislature intended to allow a more expansive inquiry before the Department, it would have said so. 36 Kan. App. 2d at 565-66.

The panel also rejected Martin's constitutional challenge to its reading of the statute, because driving is not a right but a privilege; and administrative suspension of a driver's license for the holder's failure of a chemical breath test, to which every driver gives implied consent, is supported by government's legitimate promotion of public health, safety, and welfare. 36 Kan. App. 2d at 566. In support of this holding, the panel noted several cases from other jurisdictions. 36 Kan. App. 2d at 566-67 (citing *Tornabene v. Bonine ex rel. Highway Dept.*, 203 Ariz. 326, 333, 54 P.3d 355 [Ct. App. 2002]; *Powell v. Secretary of State*, 614 A.2d 1303, 1305-06 [Me. 1992]; *Beavers v. State Dept. of Mtr. Vehicles*, 109 Nev. 435, 438, 851 P.2d 432, *cert. denied* 510 U.S. 946 [1993]).

This court granted Martin's petition for review. To resolve this case, after reference to our standard of review, it is necessary for us to address whether the Department is permitted to decide the merits of a driver's constitutional challenge in an administrative hearing on license suspension; whether, even if a decision by the

Department is precluded in an administrative setting, a driver may raise such a claim there; whether the limitations on searches and seizures of the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights are implicated when the driver's license suspension rather than criminal sanction is at issue; and whether a meritorious constitutional challenge to an underlying traffic stop requires a district court to apply the exclusionary rule and reverse license suspension.

## Standard of Review

Although generally an appellate court applies a substantial competent evidence standard of review when examining a district court's ruling in a driver's license suspension case, see *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, Syl. ¶ 1, 74 P.3d 588 (2003), the issues before us here require statutory and constitutional interpretation. These raise pure questions of law subject to unlimited review. See, *e.g.*, *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213-14, 135 P.3d 1203 (2006); *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

When we are called upon to interpret a statute, we first attempt to give effect to the intent of the legislature as expressed through its language. When a statute is plain and unambiguous, we do not attempt to determine what the law should or should not be; nor do we attempt to divine the legislative intent behind it. We will not read or rewrite such a statute to add something not readily found within it. If a statute is clear as written, there is no need to resort to statutory construction. *Williamson v. Amrani*, 283 Kan. 227, 231, 152 P.3d 60 (2007); *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 (2006). In short, statutory interpretation begins with the language selected by the legislature. If that language is clear, if it is unambiguous, then statutory interpretation ends there as well. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 161 P.3d 695 (2007).

A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. This court not only has the authority, but also the duty, to construe

a statute in such a manner that it is constitutional, if the same can be done within the apparent intent of the legislature in passing the statute. *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, Syl. ¶ 1, 133 P.3d 104 (2006). However, we may not rewrite a clear and unambiguous statute to make it pass constitutional muster. See *State v. Marsh*, 278 Kan. 520, 102 P.3d 445 (2004), *rev'd on other grounds Kansas v. Marsh*, 548 U.S. 163, 165 L. Ed. 2d 429, 126 S. Ct. 2516 (2006).

## *May the Department Decide a Constitutional Claim?*

In the administrative hearing, Martin sought a decision on the merits of his constitutional challenge to Wilson's decision to pull him over. Martin alleged that the traffic stop was not supported by reasonable suspicion, as it must be under both the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. See K.S.A. 22-2402(1); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993) (§ 15 of the Kansas Constitution Bill of Rights identical in scope to Fourth Amendment).

In *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 110 P.3d 438 (2005), this court set out a comprehensive overview of the provisions of Kansas' Implied Consent Law, K.S.A. 8-1001 *et seq.*, of which K.S.A. 8-1020(h)(2)(A)-(H) is a part. We need not repeat that overview here. Rather, we note only that, when a driver refuses or fails a test to determine the presence of alcohol or drugs in the driver's body, a law enforcement certification must be prepared and signed by one or more officers. *Cross*, 279 Kan. at 504-05 (citing K.S.A. 8-1002[a][2]). The Department's Division of Vehicles reviews the certification to ensure that all requirements were met; if so, it will suspend the driver's license. K.S.A. 8-1002(e), (f); K.S.A. 8-1013(c); *Cross*, 279 Kan. at 505. The driver may then request an administrative hearing to determine whether suspension is appropriate. K.S.A. 8-1020(a)-(d); *Cross*, 279 Kan. at 505.

K.S.A. 8-1020 governs the administrative hearing. *Cross*, 279 Kan. at 505. Subsections (e) and (f) limit the documents and materials subject to discovery; subsection (g) limits the witnesses who may testify; and subsection (h), as quoted above, lists the issues for

decision. Under subsection (k), the driver bears the burden of proving, by a preponderance of the evidence, that the facts set out in the certification are false or insufficient and that the suspension should therefore be dismissed.

If a driver is unsuccessful in challenging a license suspension at the administrative level, he or she may petition the district court for trial de novo, as Martin did in this case. K.S.A. 8-1020(p); see *Cross*, 279 Kan. at 506-07. The driver bears the burden of proving to the court that the agency decision should be set aside. K.S.A. 8-1020(q).

If the Department can decide the merits of a Fourth Amendment or § 15 claim such as that raised by Martin here, it must be empowered to do so either because K.S.A. 8-1020(h)(2) permits it or, failing that, because the federal or state constitution demands it. We turn first to the statute.

We agree with the Court of Appeals panel that K.S.A. 8-1020(h)(2)(A)-(H) is clear and unambiguous and that its list is exclusive. To the extent this is so, Martin attempts to persuade us that the issue of whether "reasonable grounds to believe" a driver was under the influence under K.S.A. 8-1020(h)(2)(A) is equivalent to the issue of whether "reasonable suspicion" existed to support the traffic stop. In other words, he asserts, the issue he wished to have decided in the administrative hearing was among those the statute permitted to be pursued there and then.

We are unmoved by this argument. "Reasonable grounds to believe" a driver is under the influence and "reasonable suspicion" sufficient under constitutional law are distinct legal concepts. The first demands consideration of the behavior of a driver before, during, and after he or she is behind the wheel. The relevant time period for determination of "reasonable suspicion," in contrast, ends at the moment the stop is effected. In addition, we observe that K.S.A. 8-1020(h)(2)(A) was enacted in 2001, long after the "reasonable suspicion" standard arose in United States Supreme Court constitutional analysis and long after we employed it in Kansas. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Boone*, 220 Kan. 758, 556 P.2d 864 (1976). Because we presume our legislature knows the law in existence at

the time of an enactment, see *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 524, 957 P.2d 473 (1998), we consider it significant that it did not choose to mimic the "reasonable suspicion" language from cases when it drafted K.S.A. 8-1020(h)(2)(A). Instead, it deliberately decided to enunciate a different standard.

The statute's exclusion of Martin's issues from the list that may be decided by the Department by means of an administrative hearing also is consistent with several of our cases arising out of challenges to Board of Tax Appeals decisions and other agency actions. In those cases, we have repeatedly recognized that administrative agencies are not empowered to decide constitutional questions; courts are. See *In re Appeal of Weisgerber*, 285 Kan. 98, Syl. 1, 169 P.3d 321 (2007); *In re Tax Appeal of CIG Field Services Co.*, 279 Kan. 857, 864, 112 P.3d 138 (2005); *In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 700-02, 101 P.3d 1239 (2004); *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, 81-82, 966 P.2d 68 (1998); *Zarda v. State*, 250 Kan. 364, 370, 826 P.2d 1365 (1992); *In re Residency Application of Bybee*, 236 Kan. 443, Syl. ¶ 4, 691 P.2d 37 (1984).

Does due process otherwise demand that the Department be empowered to decide a Fourth Amendment or § 15 claim raised by a driver subject to license suspension? We have previously recognized that limited due process applies in such matters. See *Barnes v. Kansas Dept. of Revenue*, 238 Kan. 820, 824, 714 P.2d 975 (1986) (possession of driver's license regulated privilege; "deprivation . . . by the State constitutes a deprivation of property sufficient to necessitate application of the due process clause," citing *Mackey v. Montrym*, 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612 [1979]; *Dixon v. Love*, 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723 [1977]); compare *State v. Heironimus*, 262 Kan. 796, 803, 941 P.2d 1356 (1997) (license not inherent fundamental right); *Popp v. Motor Vehicle Dept.*, 211 Kan. 763, 766, 508 P.2d 991 (1973) ("The driver's license . . . privilege is granted to those who are qualified, who comply with reasonable police power requirements in the interest of public safety and welfare, and is withheld from those who do not."); *Agee v. Kansas Highway Com-*

*mission*, 198 Kan. 173, 180, 422 P.2d 949 (1967) (license to drive motor vehicle on public streets not natural right but privilege, subject to reasonable regulation in public interest); *Lee v. State*, 187 Kan. 566, 358 P.2d 765 (1961) (driver's license not natural, unrestrained right; license privilege subject to reasonable regulations by State under police power in interest of public safety, welfare). But the outcomes in the administrative agency cases cited above suggest the answer to this question is no. In addition, in the peculiar context of alcohol- and/or drug-related driver's license suspensions, we have recently held more than once that delaying full argument and decision of a particular aspect of a case—preventing its pursuit at the administrative level and deferring it to later court appeal—does not run afoul of due process. See *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 133 P.3d 104 (2006); *Cross*, 279 Kan. 501.

In *Kempke*, the driver argued that due process was offended because he was not permitted to call the officer who administered the preliminary breath test as a witness at the administrative license suspension hearing. We disagreed, holding that suspension did not finally take place until after de novo appeal to district court and that the driver's ability to call the officer as a witness on appeal satisfied due process. 281 Kan. at 799-800. In *Cross*, we rebuffed an as-applied due process challenge to the statute limiting witnesses at administrative hearings on driver's license suspensions. 279 Kan. at 513.

In view of the fact that a driver's license is a privilege rather than a right, and in view of our approach in *Kempke*, we hold that the exclusion of Fourth Amendment and § 15 issues from Department decision in administrative suspension hearings under K.S.A. 8-1020(h)(2)(A)-(H) does not violate procedural due process.

*May a Driver Raise a Fourth Amendment Claim in an Administrative Hearing?*

The rule that a constitutional issue cannot be *decided* by an administrative agency does not necessarily preclude a driver from *raising* such an issue in that forum. Our previous cases do not preclude Martin's effort to *raise* his Fourth Amendment claim be-

fore the Department. See, *e.g.*, *CIG*, 279 Kan. at 864; *Sprint*, 278 Kan. at 700-02; see also *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197-200, 62 P.3d 236 (2003) (workers compensation case; merits of constitutional question addressed, even though issue not *decided* below).

In fact, our decision in similar circumstances in *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 148 P.3d 538 (2006), makes *raising* any potentially controlling constitutional issue at the time of the administrative hearing the wise course for a driver who wishes to preserve the issue for judicial review in the district court and beyond. 282 Kan. at 776. In *Bruch*, we stated that the district court lacked jurisdiction to consider whether an officer possessed probable cause to arrest based on results of a driver's preliminary breath test, because the driver had failed to raise the issue first in the administrative tribunal. 282 Kan. at 776.

*Do Driver's License Suspensions Implicate the Fourth Amendment and § 15?*

Previous Kansas cases have not squarely addressed whether or how the Fourth Amendment and § 15 apply to traffic stops that precede an alcohol- or drug-related driver's license suspension. See *Butcher v. Kansas Dept. of Revenue*, 34 Kan. App. 2d 826, 124 P.3d 1078 (2005) (Court of Appeals holds officer had cause to make traffic stop; no discussion of whether Fourth Amendment applies in suspension proceedings); *Pywell v. Kansas Dept. of Revenue*, No. 95,598, unpublished opinion filed February 16, 2007 (Court of Appeals panel declines to reach issue); *Hinton v. Kansas Dept. of Revenue*, No. 90,806, unpublished opinion filed October 8, 2004 (Court of Appeals holds district court lacked jurisdiction to decide whether pretextual traffic stop violated Fourth Amendment when licensee had failed to comply with specific pleading requirements). Since the Court of Appeals panel issued its decision in this case, another panel has decided that the limited scope of an administrative driver's license suspension hearing does not implicate the Fourth Amendment. See *Bray v. Kansas Dept. of Revenue*, No. 95,702, unpublished opinion filed March 2, 2007. Another panel, merely noting the issue and the decision in *Martin*, addressed the

merits of the driver's claim that a traffic stop was unconstitutional. See *Kruser v. Kansas Dept. of Revenue*, No. 95,517, unpublished opinion filed April 13, 2007.

Generally the Fourth Amendment applies to all governmental action, not just actions in criminal investigation; and its protections apply to all people, not just criminal defendants.

" '[T]he Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. [Citation omitted.] The reason is found in the "basic purpose of this Amendment . . . [which] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." [Citation omitted.] If the government intrudes on a person's property, the privacy interest suffers, whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards.' " *State v. Smith*, 243 Kan. 715, 720-721, 763 P.2d 632 (1988) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816 [1978]).

A breath, blood, or urine test for alcohol or drugs can constitute a search for purposes of the Fourth Amendment. See *State v. Jones*, 279 Kan. 71, 106 P.3d 1 (2005) (preliminary breath test [PBT] performed on driver after accident qualifies as search; deep lung air, extractable only by requiring driver to forcibly blow into device for 3 to 5 seconds, not normally held out to public).

Yet compulsory testing for alcohol or drugs through drivers' implied, even coerced, consent does not violate the Constitution; it is reasonable in light of the State's compelling interest in safety on the public roads. See *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 832 (1995); *Standish v. Department of Revenue*, 235 Kan. 900, 904, 683 P.2d 1276 (1984); *Popp v. Motor Vehicle Dept.*, 211 Kan. 763, 767, 508 P.2d 991 (1973); see also *South Dakota v. Neville*, 459 U.S. 553, 559-65, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983) (implied consent law permits licensee to submit to or refuse blood test with caveat that evidence of refusal admissible in any related criminal case; upheld against Fifth Amendment self-incrimination challenge and due process); *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966) (state-compelled blood test under implied consent law upheld on Fifth Amendment self-incrimination challenge, reject-

ing related arguments premised on due process, right to counsel, prohibition of unreasonable searches); compare *State v. Jones*, 279 Kan. 71, 79, 106 P.3d 1 (2005) (PBT results cannot be admitted in criminal DUI case absent evidence of voluntary consent; statutory implied consent does not apply to PBT; its purpose to help law enforcement ascertain whether to request test covered by implied consent rule).

Here, Martin does not challenge the constitutional legitimacy of the expectation that he will submit to testing under the Implied Consent Law or of the consequences flowing from a test failure or refusal. His Fourth Amendment and § 15 claims focus instead on whether Wilson's initial decision to pull him over was supported by reasonable suspicion. If it was not, he asserts, then Wilson's subsequent observation of him and resulting conclusion that there were "reasonable grounds to believe" Martin was driving under the influence as well as the results of the chemical breath test must be suppressed; they simply cannot be used to support license suspension.

If this were a criminal proceeding, there is no doubt that a traffic stop would be considered a seizure under constitutional law. *State v. Morris*, 276 Kan. 11, Syl. ¶¶ 3-6, 72 P.3d 570 (2003); *State v. Slater*, 267 Kan. 694, 696-97, 986 P.2d 1038 (1999); *State v. Mitchell*, 265 Kan. 238, 241, 960 P.2d 200 (1998); *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991). To stop a moving vehicle, an officer must have a reasonable suspicion based on articulable facts that a crime has been, is being, or is about to be committed. See K.S.A. 22-2402(1); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *McKeown*, 249 Kan. at 510. A traffic violation provides an objectively valid reason to effect a traffic stop, even if the stop is pretextual. See *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996); *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998). A traffic stop is not magically converted to a "nonseizure" when it leads to a civil or administrative rather than a criminal proceeding. Fourth Amendment and § 15 implications transcend this boundary because those provisions delineate rights that attach to individuals in either circumstance.

Even if constitutional rights to be free from unreasonable searches and seizures are implicated here, the Department asserts that the articulable facts in Wilson's possession were adequate to support reasonable suspicion that Martin was committing, had committed, or was about to commit a crime. See *State v. Toothman*, 267 Kan. 412, Syl. ¶ 3, 985 P.2d 701 (1999). Martin responds that Wilson made a mistake of law in interpreting the ordinance governing how many rear brake lights on a vehicle must be functioning. In his view, such a mistake of law makes any suspicion Wilson may have harbored inherently unreasonable and constitutionally inadequate to support the traffic stop.

K.S.A. 8-1708(a) requires that "[e]very motor vehicle . . . shall be equipped with two (2) or more stop lamps meeting the requirements of subsection (a) of K.S.A. 8-1721." K.S.A. 8-1721 requires every vehicle to be "equipped with a stop lamp or lamps on the rear of the vehicle . . . which shall be actuated upon application of the service or foot brake" and sets forth the colors of the "lamp or lamps" and the distance from which they must be visible. The city ordinance that formed the basis for Wilson's stop of Martin contains provisions identical to K.S.A. 8-1708 and K.S.A. 8-1721.

Before the stop, Wilson observed that only two of the three brake lights on the rear of Martin's vehicle were operating properly. Believing the ordinance required all three to be functioning, Wilson pulled Martin over. We agree with Martin that Wilson misunderstood and misapplied the ordinance. Two functioning rear brake "lamps" were sufficient under the law.

The reasonableness of an officer's suspicion is based on the totality of circumstances and is viewed from the perspective of those versed in law enforcement. See *Toothman*, 267 Kan. at 418 (citing *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 [1998], citing *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 [1993]). In light of common sense and ordinary human experience, "reasonable suspicion represents a 'minimum level of objective justification.' " *Toothman*, 267 Kan. at 418 (quoting *United States v. Mendez*, 118 F.3d 1426, 1431 [10th Cir. 1997], citing *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 [1989]).

We have not previously decided whether an officer's mistake of law alone may invalidate a traffic stop. Decisions from various panels of our Court of Appeals appear to be inconsistent on this point. Compare *State v. Ross*, 37 Kan. App. 2d 126, 131, 149 P.3d 876 (2007) (officer lacked reasonable suspicion when defendant crossed fog line; failure to maintain single lane not necessarily violation of statute); *State v. Kotas*, 35 Kan. App. 2d 769, 777, 134 P.3d 677 (2006) (officer's observation of vehicle crossing solid double yellow lines while making U-turn on bridge in advance of DUI checkpoint provided objective, articulable factual basis for reasonable suspicion, even though no statute did, in fact, prohibit driver's actions); *State v. Knight*, 33 Kan. App. 2d 325, 326, 104 P.3d 403 (2004) (defendant's failure to signal when pulling out of private parking lot onto a public street not in violation of ordinance; conviction reversed for lack of reasonable suspicion to support stop); and *City of Manhattan v. Larson*, 26 Kan. App. 2d 851, 853, 994 P.2d 1087 (2000) (officer's stop of defendant's truck for expired tag, despite statutory grace period for renewal, valid under reasonable suspicion standard).

The Tenth Circuit has adopted the view that an officer's mistake of law can make all the difference in ruling on reasonable suspicion. See *United States v. Ramstad*, 219 F.3d 1263, 1267 (2000) (mistake of law makes suspicion objectively unreasonable; fundamentally unfair to hold "citizens to the traditional rule that ignorance of the law is no excuse, while allowing those entrusted to enforce the law to be ignorant of it"); see also *United States v. Salinas-Cano*, 959 F.2d 861, 865-66 (10th Cir. 1992) (Fourth Amendment does not invalidate warrantless search based on a reasonable mistake of fact, as distinguished from a mistake of law). The Eleventh Circuit has ruled similarly. See *United States v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003). We also observe that the rationale of the *Knight* panel of our Court of Appeals was in accord with that of the Tenth Circuit. See *Knight*, 33 Kan. App. 2d at 327. In essence, a panel stated that a police officer must be held to a more demanding standard of legal knowledge than any citizen who may be subject to the officer's exercise of authority.

We find this reasoning persuasive and consequently hold that an officer's mistake of law alone can render a traffic stop violative of the Fourth Amendment and § 15 of the Bill of Rights. Here, Wilson's misunderstanding and misapplication of the ordinance on brake lights took him outside the common sense and ordinary human experience that must be considered by us on a challenge to the existence of reasonable suspicion. Wilson thus lacked constitutional authority to stop Martin, and the district judge was correct to this point of the analysis.

*Does the Exclusionary Rule Require Reversal of the Suspension?*

Martin insists that the exclusionary rule applicable in criminal cases when reasonable suspicion for a traffic stop is lacking requires suppression and thus reversal of his license suspension. He further suggests that *Meigs v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 537, 825 P.2d 1175 (1992), and *Ostmeyer v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 639, 827 P.2d 780 (1992), should guide us on this question.

In *Meigs*, an officer failed to give Elizabeth Meigs notice of the suspension that would result if she refused to take a breath test. The court determined the State's failure to comply with mandatory notice provisions in the statute required a sanction, and it drew an analogy between the case before it and criminal cases in which the exclusionary rule is employed to refuse to admit evidence gathered in violation of the Constitution. Ultimately, the court vacated the suspension, ruling that the State's failure to comply with the statute's requirements divested it of authority to suspend Meigs' license. 16 Kan. App. 2d at 543.

Similarly, in *Ostmeyer*, the court ruled that the State's failure to provide a licensee with counsel at her request after a breath test required suppression of the test results in an administrative license suspension proceeding. An express statutory provision granted the licensee the right to consult with an attorney after the test. 16 Kan. App. 2d at 642-44.

This case does not involve a violation of a mandatory provision of the Implied Consent Law by an officer of the State. We therefore regard *Miegs* and *Ostmeyer* as distinguishable.

Martin's argument also implies that the exclusionary rule is a constitutional mandate. It is not. *United States v. Leon*, 468 U.S. 897, 906, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984) (Fourth Amendment contains no provision expressly precluding use of evidence obtained in violation of its commands.).

The exclusionary rule is a judicially created remedy, designed to deter the government from engaging in unconstitutional conduct. See, *e.g.*, *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 362-63, 141 L. Ed. 2d 344, 118 S. Ct. 2014 (1998) ("We have emphasized repeatedly that the government's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."); *Arizona v. Evans*, 514 U.S. 1, 10, 131 L. Ed. 2d 34, 115 S. Ct. 1185 (1995) ("exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect," citing *Leon*, 468 U.S. at 906); *State v. Turner*, 257 Kan. 19, 21, 891 P.2d 317 (1995) (*Turner I*) ("[exclusionary] rule 'is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved,' " citing *United States v. Calandra*, 414 U.S. 338, 348, 38 L. Ed. 2d 561, 94 S. Ct. 613 [1974]).

A Fourth Amendment violation is " 'fully accomplished' " by an illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can " 'cure the invasion of the defendant's rights which he has already suffered.' " *Leon*, 468 U.S. at 906 (citing *Calandra*, 414 U.S. at 348). As such, the rule does not "proscribe the introduction of illegally seized evidence in *all* proceedings or against *all* persons." (Emphasis added). *Stone v. Powell*, 428 U.S. 465, 486, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976). It applies only in contexts " 'where its remedial objectives are thought most efficaciously served.' " *Calandra*, 414 U.S. at 348; see *United States v. Janis*, 428 U.S. 433, 454, n.29, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976).

The United States Supreme Court has held the rule applicable "only where its deterrence benefits outweigh its 'substantial social costs.' " *Pennsylvania Bd. of Probation*, 524 U.S. at 363; *Leon*, 468

U.S. at 907; *State v. Turner,* 259 Kan. 865, 870-71, 915, P.2d 753 (1996) (*Turner II* ) ("deciding whether to apply the exclusionary rule must be determined by weighing the extent to which the rule will deter unconstitutional conduct with the cost to the truth-finding process"). And, the Court has set out a framework for deciding which types of proceedings merit application of the exclusionary rule. See *Janis,* 428 U.S. 433. "Imprecise as the exercise may be," a court must weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs. See *I.N.S. v. Lopez-Mendoza,* 468 U.S. 1032, 1041-42, 82 L. Ed. 2d 778, 104 S. Ct. 3479 (1984).

"On the benefit side of the balance 'the "prime purpose" of the [exclusionary] rule, if not the sole one, "is to deter future unlawful police conduct." ' On the cost side, application of the rule means the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs." *Lopez-Mendoza,* 468 U.S. 1041-42 (quoting *Janis,* 428 U.S. at 446, quoting *Calandra,* 414 U.S. at 347); *State v. McCloud,* 257 Kan. 1, 11-12, 891 P.2d 324 (1995).

The United States Supreme Court has noted that, "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Janis,* 428 U.S. at 447; see *Lopez-Mendoza,* 468 U.S. at 1041-42; compare *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 700, 702, 14 L. Ed. 2d 170, 85 S. Ct. 1246 (1965) ("the constitutional exclusionary rule does apply to [civil] forfeiture proceedings," which are "quasi-criminal in character"). Nor does our research reveal any case in which we have previously applied the exclusionary rule to suppress unlawfully obtained evidence in an administrative or civil context. *Divine v. Groshong,* 235 Kan. 127, 679 P.2d 700 (1984) (exclusionary rule not extended to prohibit introduction of blood test evidence in civil suit; suppression in civil case in which neither State nor its officers were parties would have no deterrent effect upon law enforcement officers); *Turner I,* 257 Kan. 19, Syl. (evidence illegally seized from probationer not barred from probation revocation proceeding); see also *Huelsman v. Kansas Dept. of Revenue,* 267 Kan. 456, 461-62, 980 P.2d 1022 (1999) (suppression of evidence in criminal DUI

prosecution based on a lack of probable cause to arrest does not collaterally estop State from arguing in civil license suspension proceeding that officer had reasonable grounds to request breath test pursuant to Implied Consent Law); compare *State v. 1990 Lincoln Town Car*, 36 Kan. App. 2d 817, 145 P.3d 921 (2006) (noting Fourth Amendment protection applicable to civil forfeiture proceedings, but suppression in related criminal case does not dictate suppression in forfeiture case; collateral estoppel sole issue on appeal). We therefore examine this case under the balancing framework outlined by the United States Supreme Court.

Public interest demands that alcohol- and/or drug-impaired drivers be removed from the road. The opening provisions of the Implied Consent Law state the legislature's intention that the remedial act "be liberally construed to promote public health, safety and welfare." K.S.A. 8-1001(q). And we have recognized that it was designed to counteract the "continuing slaughter on the highways of this state and those of the nation as a whole" by alcohol- and drug-impaired drivers. *Popp*, 211 Kan. at 768; see K.S.A. 8-1001(q).

The criminal consequences of driving under the influence are provided for in different statutes. Compare K.S.A. 8-1567 (part of uniform act regulating traffic; originally enacted as L. 1974, ch. 33, sec. 8-1567) and K.S.A. 8-1001 *et seq.*, (implied consent law, originally enacted as L. 1955, ch. 61, sec. 1; substantially revised L. 2001, ch. 200, sec. 12); see *State v. Mertz*, 258 Kan. 745, 758-61, 907 P.2d 847 (1995) (suspension of driver's license for driving under influence of alcohol civil remedy designed to protect public, not criminal penalty designed to punish driver). Such civil and criminal proceedings are wholly separate from one another and are intended to serve two different purposes. *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 462, 980 P.2d 1022 (1999); *Mertz*, 258 Kan. at 759-60.

This court's decision in *Turner I* may provide a helpful analogy. The *Turner I* court concluded that the exclusionary rule generally would not apply to bar evidence illegally seized from a probationer at a probation revocation proceeding. "Any extension of exclusionary rule beyond its traditional applicability in criminal proceedings

is warranted only where use of remedy would result in appreciable deterrence of police misconduct." 257 Kan. at 21-22 (citing *Leon*, 468 U.S. at 909). We noted that use of the rule might be warranted if, under a totality of circumstances, police misconduct was egregious. 257 Kan. at 27. The facts here certainly do not reveal egregious police misconduct.

Our sister states have reached varying conclusions on the applicability of the exclusionary rule in this context.

In *Tornabene v. Bonine ex rel. Highway Dept.*, 203 Ariz. 326, 333, 54 P.3d 355 (2002), *rev. denied* May 28, 2003, Wendy Lyn Tornabene was stopped by police based on a tip from an anonymous caller. She failed field sobriety tests and refused or unreasonably delayed a breath test. At her administrative license suspension hearing, the administrative law judge ruled against her. She appealed, challenging the reasonableness of the initial traffic stop. The Superior Court vacated the ALJ's order of suspension, implicitly concluding that " 'reasonable grounds to believe that [a motorist] was driving . . . [w]hile under the influence of intoxicating liquor' . . . require[d] a predicate finding that the investigatory stop that ultimately led to those grounds for belief was lawful." 203 Ariz. at 332.

On review, the Arizona Court of Appeals noted its obligation to "decide cases on nonconstitutional grounds if possible," and first addressed whether its statute required the hearing officer to determine whether Tornabene had been legally stopped. 203 Ariz. at 332. Like Kansas, Arizona limits the scope of an administrative license suspension hearing under its implied consent provisions. Such a hearing may decide

" 'only the issues of whether:'
1. A law enforcement officer had reasonable grounds to believe that the person was driving or was in actual physical control of a motor vehicle in this state either:
(a) While under the influence of intoxicating liquor or drugs.
(b) If the person is under twenty-one years of age, with spirituous liquor in the person's body.
2. The person was placed under arrest.
3. The person refused to submit to the test.

4. The person was informed of the consequences of refusal.' " 203 Ariz. at 331-332 (citing Ariz. Rev. Stat. Ann. § 28-1321[K][1]-[4]).

The *Tornabene* court concluded that the statute expressly and clearly prohibited the hearing officer from deciding the validity of the stop. 203 Ariz. at 333. Even if the statute's language were not clear,

"the obvious spirit, purpose, context, and effect of the implied consent statute [citation omitted] establish a clear legislative intent to limit the issues for administrative review, not expand them to include consideration of the constitutional validity of the investigatory stop leading to a criminal DUI arrest. As our supreme court has stated, a civil license suspension proceeding for a DUI arrestee's refusal of testing is 'separate from and unrelated to' a criminal prosecution for DUI, and the 'outcome of one proceeding usually will not have any effect on the outcome of the other.' [Citation omitted.] In sum, we find nothing in § 28-1321 or its underlying rationale to suggest any legislative intent to incorporate all the procedural protections available to a DUI criminal defendant into the civil license suspension process. Rather, the legislature apparently intended such hearings to narrowly focus, inter alia, on whether the law enforcement officer 'had reasonable grounds to believe' that the motorist had been driving while under the influence of alcohol or drugs, regardless of the circumstances of the underlying stop." 203 Ariz. at 333.

The Arizona Court of Appeals, mindful that a statute "cannot circumvent a firmly established constitutional right," then moved to the propriety of applying the exclusionary rule if Tornabene's stop violated the Fourth Amendment. It held:

"Based on our evaluation of the relevant policies and our weighing of the relative benefits and detriments, we hold that the exclusionary rule, although required to preserve and protect Fourth Amendment rights in the criminal context, should not be applied to civil license suspension hearings under § 28-1321(K)." 203 Ariz. at 336.

It cited similar decisions from several other states. See *Fishbein v. Kozlowski*, 252 Conn. 38, 49-50, 743 A.2d 1110 (1999) ("[F]ailure to comply with the requirements for criminal prosecution as they apply to investigatory stops should not prevent suspension of the license of a person arrested upon probable cause to believe that he was operating under the influence of intoxicating liquor."); *Powell v. Secretary of State*, 614 A.2d 1303, 1305 (Me. 1992) (administrative hearing officer in license suspension pro-

ceeding need not "determine the legality of the stop or whether there was probable cause to stop the vehicle"); *Riche v. Director of Revenue*, 987 S.W.2d 331, 333, 336 (Mo. 1999) (refusing to impose on license suspension requirement of " 'probable or reasonable cause to stop' for drivers over twenty-one years of age"); *Lopez v. Director, N. H. Div. of Motor Vehicles*, 145 N.H. 222, 224, 761 A.2d 448 (2000) ("A valid arrest and traffic stop, while vital to a criminal proceeding, is not a required predicate under the [license suspension] statute"); *Com. Dep't of Transp. v. Wysocki*, 517 Pa. 175, 179, 535 A.2d 77 (1987) (alleged illegality of vehicle stop does not prevent suspension of license for refusal to submit to breathalyzer test); see also *Nevers v. State, Dept. of Admin.*, 123 P.3d 958, 964 (Alaska 2005) (exclusionary rule generally does not apply to license revocation proceedings; exception would trigger rule in case where "police misconduct . . . shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom"); *Chase v. Neth*, 269 Neb. 882, 892, 697 N.W.2d 675 (2005) (holding exclusionary rule inapplicable to administrative license revocation proceedings, except as indirectly applied through later statutory provision that suspension for refusal to submit to chemical test dependent upon successful criminal prosecution); *Jacobs v. Director, Div. of Motor Vehicles*, 149 N.H. 502, 823 A.2d 752 (2003) (affirming *Lopez*; reasonableness of underlying stop irrelevant in driver's license suspension proceeding; unlawful stop does not trigger application of exclusionary rule).

A minority of jurisdictions that have considered the issue, as noted by the *Tornabene* court, "have superimposed on their license suspension statutes a requirement that the underlying stop be lawful, even when the statutes contained no such condition." *Tornabene*, 203 Ariz. at 334; see, *e.g., People v. Krueger*, 208 Ill. App. 3d 897, 906, 567 N.E.2d 717 (1991), *cert. denied* 503 U.S. 919 (1992) ("[W]e are unwilling to conclude that the legislature intended to authorize the suspension of drivers' licenses based on the fruits of illegal arrests"); *Olson v. Com'r of Public Safety*, 371 N.W.2d 552, 556 (Minn. 1985) (investigatory DUI stops that result in license revocation proceedings must comply with Fourth Amendment

standards); see also *State v. Lussier*, 171 Vt. 19, 28, 757 A.2d 1017 (2000) (relying on Vermont Constitution; state constitution construed more liberally than Fourth Amendment); *Pooler v. MVD*, 306 Or. 47, 51, 755 P.2d 701 (1988) (en banc) (court refuses to "attribute to the legislature the intent to sanction unconstitutional procedures"; suspension of driver's license under implied consent statute must be based on valid arrest; otherwise, resulting evidence must be excluded); *Watford v. Bur. of Motor Vehicles*, 110 Ohio App. 3d 499, 502, 674 N.E.2d 776 (1996) ("a lawful arrest, including a constitutional stop," required before refusal to take test triggers license suspension).

California's cases are inconsistent. See *Gikas v. Zolin*, 6 Cal. 4th 841, 848, 25 Cal. Rptr. 2d 500, 863 P.2d 745 (1993) (en banc) (license suspension requires lawful arrest based on constitutional stop); but see *Park v. Valverde*, 152 Cal. App. 4th 877, 61 Cal. Rptr. 3d 895 (2007), *rev. denied* September 25, 2007 (suppression in license proceeding not required, although traffic stop based on outdated information).

We regard the reasoning and outcomes of the Arizona Court of Appeals and the majority of our sister states as more sound. The balance outlined by the United States Supreme Court between the benefits and costs of application of the exclusionary rule, when employed in driver's license suspension proceedings, tips in favor of the Department and against Martin and other drivers. The deterrent effect of the rule is already accomplished in the criminal arena. Any additional deterrent effect on law enforcement violation of the Fourth Amendment and § 15 to be gleaned from extension of the rule beyond the criminal DUI setting would be minimal, and it cannot outweigh the remedial imperative of preventing alcohol- and/or drug-impaired drivers from injury or killing themselves or others. Responsive administrative license regulation is essential to that public good. It should not be hamstrung by application of the rule here.

Court of Appeals is affirmed. District court is reversed.

DAVIS and JOHNSON, JJ., not participating.

BRAZIL, S.J., and LARSON, S.J., assigned.

ROSEN, J., dissenting: I agree with the majority's well-reasoned opinion up to the point that it declines to apply the exclusionary rule in this context. I cannot concur with a result that renders meaningless the guarantees of the Fourth Amendment. For me, the balance tips in favor of Martin and requires reversal of his suspension. Resolving this case under the balancing framework as applied by the majority results in legalizing the unconstitutional seizure of our citizens to effectuate a statutory purpose. I do not interpret K.S.A. 8-1020(h)(2) as tolerating or now, as a result of this ruling, condoning unconstitutional searches and seizures and authorizing driver's license suspensions to be based on the fruits of unconstitutional police conduct. Quite to the contrary, our appellate cases consistently require strict compliance with K.S.A. 8-1002 and 8-1020 to secure a driver's licence suspension. See, *e.g.*, *State v. Conn*, 278 Kan. 387, 400, 99 P.3d 1108 (2004); *State v. Muck*, 262 Kan. 459, 939 P.2d 896 (1997); *State v. Luft*, 248 Kan. 911, 912, 811 P.2d 873 (1991); *Lee v. State*, 187 Kan. 566, 567, 358 P.2d 765 (1961); *Schulz v. Kansas Dept. of Revenue*, 19 Kan. App. 2d 665, 667, 877 P.2d 1 (1994); *Furthmyer v. Kansas Dept. of Revenue*, 19 Kan. App. 2d 591, 593, 595 873 P.2d 1365 (1994); *Anderson v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 347, 349, 853 P.2d 69 (1993); *Double S, Inc. v. Northwest Kansas Prod. Cred. Ass'n*, 17 Kan. App. 2d 740, 743, 843 P.2d 741 (1992). It is inconsistent and illogical that the law requires such strict compliance with statutorily created rights in administrative suspension hearings while removing from those same defendants in those same proceedings their constitutionally protected right to be free from unlawful seizures.

I am extremely mindful of the paramount public objective of removing intoxicated drivers from our public roads and highways; however, achievement of this goal should not be at the expense of

the protections guaranteed by our Constitution. The majority's decision now permits law enforcement officers to make random stops of vehicles for any or no reason at all in hopes of detecting impaired drivers.

" 'If the exclusionary rule were not applied in civil suspension proceedings, law enforcement officers could make investigatory stops based on hunches or stereotyped beliefs, or for any or no reason whatsoever, knowing that even if any evidence obtained from the stop were to be suppressed in criminal proceedings, license suspensions could still follow. Given the significance of obtaining license suspensions, allowing unlawfully obtained evidence to be admitted in civil suspension proceedings could encourage disregard for the constitutional limits of a legal stop.' See LaFave, *supra*, at 202-03 (highly relevant factors in determining whether to apply exclusionary rule in quasi—criminal proceedings are magnitude of consequences for individual involved and extent to which nonexclusion would encourage unlawful searches and seizures)." *State v. Lussier*, 171 Vt. 19, 757 A.2nd 1017 (2000).

Further, the majority creates a dual standard to initiate traffic stops for law enforcement. One standard allowing for no reason at all to stop a motorist for an implied consent driver's license suspension. The other standard requiring reasonable suspicion to stop a motorist for suspected violation of K.S.A. 8-1567 (DUI offenses) or any other statute or ordinance. This duality is confusing and likely to lead to inconsistent enforcement of our laws. A bright line rule requiring reasonable suspicion to stop a motorist for suspected violation of any law regardless of whether it leads to a criminal or civil sanction is clear, enforceable, and more likely to result in consistent and uniform application of our laws upon our citizenry.

I am not persuaded that the balancing utilized by the majority compels the introduction of unlawfully obtained evidence in a civil suspension proceeding. Neither the majority nor the Kansas Department of Revenue cites to any empirical evidence indicating that applying the exclusionary rule in suspension hearings will have a harmful effect on "the remedial imperative of preventing alcohol-and/or drug-impaired drivers from injury or killing themselves or others." See 285 Kan. at 646. One could just as easily argue that the threat of driver's license suspensions and the suspensions themselves have had little impact on keeping drunk drivers off our highways. Our constitutional rights do not stop at the civil or adminis-

trative law doorstep. By requiring a lawful vehicle stop as a prerequisite for the imposition of a driver's license suspension pursuant to K.S.A. 8-1020(h)(2) we establish a consistent and logical enforcement mechanism that protects our citizens' constitutional rights to be free of unlawful government seizures and at the same time effectuates the strict and harsh penalties against drunk driving as enacted by our legislature.

LUCKERT, J., joins in the foregoing dissenting opinion.