NOT DESIGNATED FOR PUBLICATION

No. 117,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK WHIGHAM,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; GERALD T. ELLIOTT, judge. Opinion filed April 20, 2018.
Affirmed.

*Thomas J. Bath, Jr.*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*Adam D. King*, of Kansas Department of Revenue, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM:   Patrick Whigham appeals the administrative suspension of his
driver's license by the Kansas Department of Revenue (KDR).

Whigham was arrested for driving under the influence (DUI). He was read a 2013
version of the DC-70 implied consent advisories, which included the criminal penalties
found facially unconstitutional in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce
I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*). After being read his
advisories and given a copy, Whigham refused to take a breathalyzer. The arresting
officer certified a DC-27 form, which resulted in the suspension of Whigham's driver's

license. Whigham requested an administrative hearing with the KDR and then appealed to the trial court. Both the KDR and trial court affirmed Whigham's driver's license suspension.

Whigham now appeals to this court arguing that police officers conducted an illegal search at his home requiring suppression of the evidence that was obtained, that he was given an unconstitutional and inaccurate notice regarding testing and other consequences concerning his DUI investigation, and that his due process rights were violated. For the reasons set forth later, we reject these arguments. Accordingly, we affirm.

The material facts are not disputed by the parties absent the assertion by the KDR that Exhibit Q was not a part of the record. Additionally, Exhibit Q was properly admitted as evidence in the trial court and is a part of the record on appeal.

On December 7, 2015, two Leawood police officers were sent at 7:53 p.m. to Whigham's neighborhood after a motorist's tip. The motorist reported that a gold jeep ran a red light, weaved across a road, and drove through a yard into a six-home cul-de-sac. Once in the cul-de-sac, Officer Christina Farquhar and Officer David Winders located a vehicle similar to the one described by the witness. The vehicle was parked inside an open garage attached to Whigham's home. A search warrant was not sought before the officers entered the garage. Officer Winders entered first, then called Officer Farquhar into the garage. Both officers used their flashlights to see into the dark garage and vehicle. The vehicle was not running when the officers approached it. Whigham was found in the driver's seat of the vehicle, hunched over the steering wheel. After making contact with Whigham, Officer Winders asked him to get out of his vehicle.

After getting out of the vehicle, Officer Winders could smell the odor of alcohol coming from Whigham. Whigham also admitted that he had been drinking that night. Whigham was directed to his driveway to perform field sobriety testing. Officer Farquhar

testified that Whigham exhibited several clues of impairment from the test. Whigham was arrested on suspicion of driving under the influence of alcohol. At the police station, Whigham was given implied consent advisories, both orally and in writing on a DC-70 form, after which, Whigham refused to provide a breath sample. The officers did not seek or obtain a blood sample.

As a consequence of his refusal to provide a breath sample, Whigham's driver's license was suspended. Whigham requested an administrative hearing. The administrative hearing officer upheld the suspension order. Whigham then appealed the decision to the trial court. The trial court also affirmed the suspension order.

*Does the Exclusionary Rule Require Suppression of Evidence Derived From Whigham's Encounter with Law Enforcement?*

Whigham makes a separate argument that his breath test results should be suppressed. Whigham, however, refused testing and no breath sample was collected. Thus, we address the issue of suppression as only one issue.

Generally, this court reviews a trial court's determination to suspend a license for substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). When, as in this case, the issue on appeal involves statutory and constitutional interpretations, this court exercises unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, Syl. ¶ 1, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 1011-13, 350 P.3d 1048 (2015).

Whigham argues that the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights require the suppression of any evidence seized after the arguably unlawful entrance of the police officers onto Whigham's property. Our Supreme Court has held that the exclusionary rule does not

3

apply in cases involving the administrative suspension of driving privileges because these cases are civil actions rather than criminal prosecutions. *Martin*, 285 Kan. at 646.

Whigham, however, argues that the *Martin* holding does not override his suppression argument because of policy implications and statutory interpretation. He first argues that public policy demands that *Martin* not be read so strictly as to "bless unannounced police entrance through homes and into bedrooms. The court must draw a line somewhere. [Whigham] argues that line should be drawn somewhere before the clearly illegal entry into his home." Whigham also relies on K.S.A. 2017 Supp. 8-1020(p) in making his argument against following the rule set forth in *Martin*.

K.S.A. 2017 Supp. 8-1020(p) in pertinent part, states:

"Notwithstanding K.S.A. 77-617, and amendments thereto, the court: (1) May also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, even if such issue was not raised before the agency; and (2) shall also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, if such issue is raised by the petitioner in the petition for review, even if such issue was not raised before the agency. If the court finds that the grounds for action by the agency have been met, the court shall affirm."

Whigham asserts that this amendment in effect overrules our Supreme Court's decision in *Martin* because the amendment would have essentially no purpose if the trial court was allowed to consider constitutional issues without an ability to do more, that is, to suppress evidence when an illegal search has occurred. Whigham asks this court to consider the intent of the Legislature in determining its purpose for enacting K.S.A. 2017 Supp. 8-1020(p) and, in doing so, conclude that the amended statute allows the trial court to consider a Fourth Amendment violation and to suppress evidence if the trial court finds such a violation has occurred.

4

Nevertheless, as currently written, K.S.A. 2017 Supp. 8-1020(p) does not go far enough to say that the *Martin* holding is no longer good law on this point. As previously cited, this subsection allows a court to consider "any constitutional issue" and "the lawfulness of the law enforcement encounter" to "determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter." Here, the Legislature chose the specific language used in this subsection. If it was the Legislature's intent to overrule the *Martin* holding or to allow the suppression of illegally seized evidence in administrative suspension hearings, the Legislature could have clearly expressed this intent. Nevertheless, K.S.A. 2017 Supp. 8-1020(p) contains no language allowing the suppression of this type of evidence in administrative suspension hearings. Because the absence of any such declarative language (allowing the suppression of illegally seized evidence) in K.S.A. 2017 Supp. 8-1020(p), we conclude that Whigham's argument is not currently warranted by the law.

In summary, regardless of Whigham's policy claims or argument that the amended statute somehow changes the effect of *Martin*, absent some indication that our Supreme Court is departing from its previous position, this court is duty bound to follow our Supreme Court precedent. *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015). Our Supreme Court still holds that the exclusionary rule applies in contexts only "'where its remedial objectives are thought most efficaciously served.'" *In re Tax Appeal of Burch*, 296 Kan. 713, 724, 294 P.3d 1155 (2013) (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 [1974]). The court has not indicated an intent to depart from its decision in *Martin* that the administrative suspension of a license is not one of these contexts. *Martin*, 285 Kan. at 625. Additionally, our Supreme Court has specified that "a petitioner may raise Fourth Amendment claims, but such claims have no practical effect (meaning such claims do not trigger the exclusion of resultant evidence) in the administrative context." *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 396, 204 P.3d 562 (2009) (citing *Martin*, 285 Kan. at 646). Consequently, Whigham's argument fails.

*Were the DC-70 Implied Consent Advisories Given to Whigham Proper?*

This issue requires statutory and constitutional interpretation subject to unlimited review. *Martin*, 285 Kan. at 629.

Whigham argues that paragraphs one, two, and four of the DC-70 advisories that the police provided to him were inaccurate, insufficient, and an unconstitutional notice that did not substantially comply with K.S.A. 8-1001 et. seq. He first argues that paragraph one wrongfully advised him that testing was *required*. He then argues that paragraphs two and four advised him of unconstitutional criminal penalties and consequences.

In his brief, Whigham does not argue that the advisories given do not substantially comply with K.S.A. 2017 Supp. 8-1001(k)—the notice requirements—because the advisories mirror the exact wording in that section of the statute. Instead, Whigham argues that the advisories do not substantially comply with K.S.A. 2017 Supp. 8-1001(b), which mandates that an officer *request* a test of breath, blood, or urine if other requirements are met.

Whigham and the KDR both argue that the real conflict revolves around the meaning of the term "required."

*A. Paragraph one: intent of the Legislature in using the term "required"*

Whigham argues that the word "required," as used in the advisories given to him, misstates the law because no person is required to submit to testing. Rather, "[a] law enforcement officer shall *request* a person to submit to a test or tests deemed consented to." K.S.A. 2017 Supp. 8-1001(b). Whigham argues that the problem of using "require" in advisories is exacerbated by the Supreme Court's decisions in *Ryce I* and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017). In those cases, our Supreme Court held that K.S.A. 2014 Supp. 8-1025 was facially unconstitutional and that advising a person suspected of a DUI was an inaccurate, and therefore coercive advisement. *Ryce I*, 303 Kan. at 963; *Nece I*, 303 Kan. at 897. Additionally, Whigham argues that his refusal of the breath test is irrelevant because according to *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 682, 840 P.2d 448 (1992), prejudice need not be shown if the advisories did not substantially comply with the statute.

The KDR responds to Whigham's arguments in two ways. First, the KDR argues that the context of the other advisories does not obviate a person's right to refuse a requested test. Meaning, that since the advisories warn of the consequences of refusal, it is obvious the DUI suspect has a right to refuse them. Next, the KDR argues that Black's Law Dictionary and Webster's Dictionary define "require" and "requirement" as flexible terms that can be understood as having a "conditional sense." See Black's Law Dictionary 1498 (10th ed. 2014); Webster's New World College Dictionary 1235 (5th ed. 2014).

Because Whigham's argument requires interpretation of K.S.A. 2017 Supp. 8-1001, it is important to review the rules of statutory interpretation. The most fundamental rule of statutory interpretation is that the intent of the Legislature governs if that intent can be ascertained. *The Salina Journal v. Brownback*, 54 Kan. App. 2d 1, 8, 394 P.3d 134, *rev. denied* 306 Kan. 1332 (2017). An appellate court first looks to the plain language of the statute in question. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135

7

(2016). In doing so, it is this court's duty to give common words their ordinary meanings. 304 Kan. at 409. "When a statute is plain and unambiguous, [this court is] not to speculate about the legislative intent behind that clear language and must refrain from reading something into the statute that is not readily found in its words." *SWKI-Seward West Central, Inc. v. Kansas Corporation Comm'n*, No. 116,795, 2018 WL 385692, at *8 (Kan. App. 2018) (unpublished opinion).

When read as a whole, K.S.A. 2017 Supp. 8-1001(b) mandates that a police officer "*shall request*" a breath test if, for example, "at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both." The statute regarding advisories, however, is the first place to indicate that a person is *required* to submit to testing. See K.S.A. 2017 Supp. 8-1001(k)(1). The parties seemingly suggest that there are two lines of argument that can be made from this change in language. Either the intent of the Legislature is unclear and this court can utilize the liberal construction doctrine to tease out the intent, or the use of the term require can be deemed an intentional use of mandatory language. The KDR argues that "[i]f possible, effect must be given to all provisions of the act, and different provisions must be reconciled in a way that makes them consistent and harmonious." *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990). Whigham, on the other hand, argues that "the text of the statute indicates that the legislature knew how to switch between mandatory and directive language." *Walker v. Brizendine*, No. 114,776, 2016 WL 5012505 (Kan. App. 2016) (unpublished opinion).

If the intent of the Legislature is not clear under the plain language of the statute, the canons of statutory construction can be used to determine that intent. *Ullery*, 304 Kan. at 409. Statutory construction canons include the doctrine of liberal construction. In *Eveleigh v. Conness*, 261 Kan. 970, 977-78, 933 P.2d 675 (1997), our Supreme Court explained the doctrine of liberal construction and its application as follows:

8

"The true purpose of the liberal construction doctrine . . . is to carry out the intention of the legislature. In *Board of Trustees of Butler Co. Comm. College v. Board of Sedgwick Co. Comm'rs*, 257 Kan. 468, 476, 893 P.2d 224 (1995), we said: 'The function of liberal construction is called into use where there is ambiguity in the language of the statute or, in other words, where there are one or more interpretations which may fairly be made.' It is also well established that the doctrine of liberal construction does not allow this court to delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct. [Citation omitted.]"

As argued by the KDR, Black's Law Dictionary defines the term "require" as: "[t]o direct, order, demand, instruct, command, claim, compel, *request*, need, exact." (Emphasis added.) Black's Law Dictionary 1468 (4th ed. 1951). "Requirement" is defined as follows:

"**1.** Something that must be done because of a law or rule; something legally imposed, called for, or demanded; an imperative command <building requirements specified in the Americans with Disabilities Act>. **2.** Something that someone needs or asks for <the new telephone system meets all our requirements>. See *requirements contract* under CONTRACT. **3.** Something, such as good test results, that an employer, university, etc. sets as a necessary qualification; a requisite or essential condition <fulfilling the requirements for college admission>. **4.** The act of establishing something as a need or necessity; a demand <the requirement by management that no children under 10 be allowed at our workplace>." Black's Law Dictionary 1498 (10th ed. 2014).

Following the KDR's argument, the term required can be read to mean something similar to a request. There are, however, notable flaws in the KDR's assessment of the meaning of "required." Most notably, the definitions listed by the KDR mostly include definitions that insinuate something mandatory. Moreover, interpreting the statute in such a way could insert ambiguity where it does not naturally exist.

9

On the other hand, the conclusion made in *Walker* as argued by Whigham, would not insert ambiguity. Additionally the proposed legislation for the 2018 session suggests that the Legislature probably did intend to use "required" as a mandatory term rather than a directory term. The proposed legislation states:

"(k) Before a test or tests are administered under this section, the person shall be given oral and written notice that:

(1) Kansas law ~~requires~~ allows the person to ~~submit~~ consent to and complete one or more tests of breath, blood or urine ~~to determine~~ for the sole purpose of determining if the person is under the influence of alcohol or drugs, or both;

(2) ~~the opportunity to consent to or refuse a test is not a constitutional right~~ if lawfully arrested, the person does not have a constitutional right to refuse a breath test, but does have a constitutional right to refuse a blood or urine test;

(3) there is no constitutional right to consult with an attorney regarding whether to submit to testing.

(4) ~~( if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:~~

~~(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or~~

~~(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2,144, and amendments thereto, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older.~~" Kansas Senate Bill No. 297, Kansas 2018 Legislative Session.

If accepted, the proposal would change "requires" to "allows." "Allows" is comparatively a more directional term rather than a mandatory term, suggesting the original use of required was intended as a mandatory term. Thus, Whigham's argument here is more

10

persuasive than the KDR's. It, however, is foreclosed by Officer Farquhar's good-faith reliance on the advisories.

Indeed, the good-faith exception applies to law enforcement officers who reasonably rely on a statute authorizing a warrantless search that is later determined to be unconstitutional. See *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010) (adopting *Krull*), *cert. denied* 563 U.S. 945 (2011). To determine whether a law enforcement officer reasonably relied on a statute, courts are to consider whether the Legislature "'wholly abandoned its responsibility to enact constitutional laws'" and whether the statute was so clearly unconstitutional that "'a reasonable officer should have known that [it] was unconstitutional.'" *Daniel*, 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

Moreover, there is "nothing here to suggest either that the Kansas Legislature wholly abandoned its responsibility to enact constitutional laws or that the statute was so clearly unconstitutional . . . that a reasonably well-trained officer would have known that it was unconstitutional." *State v. Kraemer*, 52 Kan. App. 2d 686, 699, 371 P.3d 954 (2016). Here, Officer Farquhar provided Whigham with the required implied consent advisories and relied on those advisories in good faith. Thus, Whigham's argument fails.

A. *Paragraphs two and four: notice of criminal penalties*

Whigham argues that our Supreme Court's decisions in *Ryce I* and *Nece I* require that Whigham's suspension be overruled because the advisories given to him included potential criminal penalties for refusing consent. *Ryce I* applies only when a suspect had withdrawn consent in a criminal case. *Ryce I*, 303 Kan. at 963. *Nece I* applies only when a defendant consented to testing after being advised that he or she may be charged with a separate criminal offense. *Nece I*, 303 Kan. at 896. Here, Whigham's appeal involves only a civil penalty. Moreover, Whigham did not consent to the officer's request for a

11

breathalyzer test. Thus, Whigham's appeal does not fit within the *Ryce I* and *Nece I* holdings because his case does not involve a criminal penalty or a consent.

*Were Whigham's Due Process Rights Violated?*

Whether Whigham's due process rights were violated is a question of law over which this court exercises unlimited review. *Rother v. Kansas Dept. of Revenue*, No. 107,416, 2013 WL 1339900, at *2 (Kan. App. 2013) (unpublished opinion). Licenses are not to be taken away without the procedural due process required by the Fourteenth Amendment. *Kempke v. Kansas Dept. of Revenue,* 281 Kan. 770, 776, 133 P.3d 104 (2006).

Whigham uses the factors from *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979), to describe why he was denied due process. Nevertheless, the use of those factors are for purposes of deciding what level of due process is due after a government action is found to require due process. 433 U.S. at 10.

Our Supreme Court has previously held that limited due process applies in driver's license suspension cases. *Martin*, 285 Kan. at 632. In *Kempke*, our Supreme Court clarified that in driver's license suspension cases, due process is satisfied by the provisions of opportunities for an administrative hearing and appeal to the trial court for a trial de novo before the suspension is imposed. *Kempke*, 281 Kan. at 794-95. Whigham's challenge to his driver's license suspension was reviewed both administratively and judicially. Additionally, he was represented by counsel and was able to call witnesses and introduce evidence. Accordingly, Whigham's argument that his due process rights were violated is fatally flawed.

Affirmed.

12