(324 P.3d 321)
No. 108,861

ISRAEL MANZANO, *Appellee*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellant*.

—

Opinion filed
May 9, 2014.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Leslie A. Hess* and *Andrea K. Swisher*, of Kennedy Berkley Yarnevich & Williamson, Chartered, of Hays, for appellee.

Before LEBEN, P.J., MCANANY and POWELL, JJ.

LEBEN, J.: The Kansas implied-consent law provides that a driver's license may be suspended for a failure to take a blood or

breath test for alcohol when a law-enforcement officer has reasonable grounds to believe the person was driving while intoxicated. But the law also provides hearings that meet constitutional due-process requirements by allowing both an administrative hearing before a Kansas Department of Revenue hearing officer and, if unsuccessful there, a new trial before the district court.

The Department of Revenue appeals the district court's order setting aside the administrative suspension of Israel Manzano's driver's license. The district court found that the administrative hearing provided to Manzano had been a sham, thus violating his right to a fair and impartial hearing. The Department has appealed, contending that there was no due-process violation since Manzano's license has remained in effect on a temporary basis while his appeal has been pending in the courts.

But we agree with the district court that Manzano's administrative hearing did not provide a meaningful opportunity to present evidence, to explore the issues, or to identify the issues that would be subject to a de novo trial in the district court. Under these circumstances, Manzano's due-process rights were violated, and the district court entered an appropriate remedy in light of that violation. We therefore affirm the district court's judgment.

## Factual and Procedural Background

On September 30, 2011, Kansas Department of Revenue Administrative Hearing Officer Kent Collins affirmed the agency's suspension of Manzano's driver's license. Manzano was stopped while operating a motor vehicle in Garden City, Kansas, on November 28, 2010. Police Officer David Wheet initiated the traffic stop. Officer Wheet testified at the administrative hearing that he initiated the stop after observing the vehicle accelerate rapidly from a stop sign, squealing the tires. Officer Wheet called Police Officer Oscar Flores to the scene of the stop because Officer Flores was part of the DUI saturation patrol that night.

Manzano was arrested and charged with a DUI in violation of K.S.A. 2010 Supp. 8-1567. After being given the required implied-consent advisories, Manzano refused to submit to testing intended to determine the presence of alcohol or drugs in his body. Officers

Flores and Wheet filled out the Officer's Certification and Notice of Suspension form (DC-27) and gave it to Manzano at 3:50 a.m.

Manzano requested an in-person administrative hearing, which was held September 30, 2011, before Administrative Hearing Officer Collins. Manzano and Officers Flores and Wheet were present to testify at the hearing. Counsel began questioning Officer Wheet regarding his investigative report. After a few preliminary questions about when and where Officer Wheet wrote his report, Collins interrupted saying, "Let's move on. If there's an issue with the report get to it." Counsel continued by questioning Wheet about where he and his car were located in relation to where Manzano was driving. After seven more questions from counsel, Collins again interrupted, "Get to the stop. This is taking way too long."

After another seven short questions (*e.g.*, "How far back?"; "Were your windows up?"), Collins said, "Let's get to the actual stop itself." Counsel asked Wheet why he began following Manzano. Wheet said that Manzano had "accelerate[d] rapidly" from a stop sign, "squealing the tires." Counsel then asked whether the officer's windows were down ("No") and followed up by asking what the speed limit was at that location.

Collins again interrupted and ruled that Manzano's attorney could not ask any further questions about how and why the officer conducted a traffic stop: "According to the *Martin* case [*Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 176 P.3d 938 (2008)], that's as far as we're going to go with that. Move on to his contact with your client." Counsel continued by asking Officer Wheet how far he had followed Manzano's vehicle and if he observed anything else. Collins told the attorney to move on: "Let's go to his contact with your client. . . . Client's parked in the driveway, the officer stopped, go from there."

Counsel asked four questions about who was present and then asked where Wheet had turned on his police lights to pull over Manzano in relationship to where Manzano had pulled into his driveway. Collins did not allow Wheet to answer. Collins said, "I don't care. Go ahead. Next question." Counsel asked eight more questions about the discussion that Wheet had with Manzano after

the stop. At that point, Collins said he would only allow 5 more minutes to finish the hearing:

> "[Hearing Officer Collins:] Okay, I'm going to give you 5 more minutes to complete this.
> "[Counsel:] Well —
> "[Hearing Officer Collins:] Then I'm going to make a ruling based on what I've heard.
> "[Counsel:] Well, wait, I — I have the other officer. I —
> "[Hearing Officer Collins:] Then you better hurry.
> "[Counsel:] Well, if we're behind I can reschedule for a time that you have time.
> "[Hearing Officer Collins:] No, we can't reschedule. We're going to do it today.
> "[Counsel:] Well, it's going to take me —
> "[Hearing Officer Collins:] It's docketed for 10 minutes.
> "[Counsel:] Well, I didn't docket it for 10.
> "[Hearing Officer Collins:] Use the time as you [see] fit. Just warning you."

Counsel finished questioning Officer Wheet (15 additional questions) and began questioning Officer Flores. She questioned Officer Flores, uninterrupted, regarding his report, Manzano's ability to stop the vehicle, Manzano's ability to speak clearly, and whether there was a videotape of the stop. Officer Flores explained that the written report had some information missing—that he had asked Manzano if he would be willing to go to the Law Enforcement Center to complete an alcohol-related test and that Manzano had said he would. At that point, Collins ended the hearing:

> "[Hearing Officer Collins:] "At this time, I'm going to affirm the certification.
> "[Counsel:] Um, I'm not done yet, because my client hasn't testified.
> "[Hearing Officer Collins:] No, ma'am. We're done.
> "[Counsel:] We're not done with the hearing.
> "[Hearing Officer Collins:] I said we're done. There's your copy of the order. There's one for the officers."

Manzano filed a timely petition for judicial review by the district court. Manzano claimed that the agency did not have jurisdiction to suspend his license because he did not receive due process of law during the administrative hearing. He also alleged that the procedure and decision-making process of the agency was unlawful and that the agency action was unreasonable, arbitrary, and capricious.

The district court conducted its hearing on September 6, 2012. Prior to the presentation of any evidence or testimony, the trial judge requested that the parties discuss the preliminary issues in the case. During that discussion, Manzano raised the issue of due process based on the abbreviated administrative hearing. After hearing further arguments and opening statements from the parties, the court noted it had read the stipulated transcript of the administrative hearing and declared the hearing "a farce." The court continued, "[T]here was a travesty of justice performed by the hearing officer. That there was not any reasonable due process of law provided to Mr. Manzano during that particular hearing. And, frankly, he didn't get a hearing."

The district court dismissed the agency's action against Manzano and ordered his driver's license reinstated. The Kansas Department of Revenue has appealed to this court.

### Legal Standards Applicable to This Appeal

When a party in a driver's-license-suspension case appeals from an administrative hearing to the district court, the district court reviews the matter under the Kansas Judicial Review Act (the KJRA), K.S.A. 77-601 *et seq.* See K.S.A. 2013 Supp. 8-1020(p). Under the KJRA, the district court may grant relief if the agency action violated constitutional rights, K.S.A. 2013 Supp. 77-621(c)(1), if the agency erroneously interpreted the law, K.S.A. 2013 Supp. 77-621(c)(4), if the agency procedure was unlawful, K.S.A. 2013 Supp. 77-621(c)(5), and if the agency action was otherwise unreasonable, arbitrary, or capricious, K.S.A. 2013 Supp. 77-621(c)(8).

To the extent that the facts are not in dispute and only legal issues are involved, we review the matter independently, without any required deference to the district court. See *In re Doe,* 277 Kan. 795, 799, 90 P.3d 940 (2004). Here, the facts are not in dispute as to what happened at the administrative hearing, for which we have a transcript.

To the extent that any issues required the application of discretion by the district court, we review the district court's decision for abuse of discretion. Unless the district court has made a factual or

legal error, a district court abuses its discretion only when no reasonable person would agree with its decision. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013).

ANALYSIS

I. *The Hearing Officer Presiding over Manzano's Administrative Hearing Violated Manzano's Due-Process Rights by Arbitrarily Limiting the Hearing by Time and Subject Matter.*

Before we discuss the specific arguments the parties have made in this appeal, we first must place them into the procedural framework of the Kansas implied-consent law as well as the Kansas Supreme Court's guidance about a driver's due-process rights under that law. The implied-consent law provides that a law-enforcement officer may ask a person to take a breath or blood test for alcohol when the officer has reasonable grounds to believe that the person was operating or attempting to operate a vehicle under the influence of alcohol or drugs. See K.S.A. 2013 Supp. 8-1001(b)(1). If the person fails or refuses the test, the person's driving privileges may be suspended. See K.S.A. 2013 Supp. 8-1002(e), (f).

That's obviously an important matter, and Kansas law provides for two hearings at which the driver can challenge the suspension. First, the driver may request an administrative hearing before a hearing officer of the Department of Revenue. See K.S.A. 2013 Supp. 8-1020(a), (d). If the driver is not successful at the administrative hearing, he or she may petition for review in the district court, in which case the matter is tried "de novo" there, which means that the district court decides the matter independently based solely on the evidence presented to it. See K.S.A. 2013 Supp. 8-1020(p).

How these two hearings have been structured has varied over the years, as our Supreme Court set out in some detail in *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 781-97, 133 P.3d 104 (2006). At one time, only one issue could be argued at the administrative hearing when a driver refused a drug or alcohol test— whether the driver had reasonable grounds to refuse the test—and the driver's license was suspended from the time of the administrative hearing (assuming the driver lost) until the de novo trial in

the district court. 281 Kan. at 783, 790. Based on that system, the Kansas Supreme Court ruled in *Wulfkuhle v. Kansas Dept. of Revenue*, 234 Kan. 241, 246-49, 671 P.2d 547 (1983), that the administrative-hearing process then in place violated a driver's due-process rights because it failed to provide sufficient opportunity to cross-examine witnesses at the administrative hearing.

As the *Kempke* court noted, however, the implied-consent statute has since been amended in significant ways. Now, the driver's license suspension does not take effect until after the de novo trial in the district court, assuming the driver properly files and serves the petition for review by the district court. See K.S.A. 2013 Supp. 8-1020(o); *Kempke*, 281 Kan. at 783. In addition, as the Department of Revenue argued in *Kempke*, see 281 Kan. at 790, the scope of the administrative hearing was substantially broadened after *Wulfkuhle*. Given these developments, our Supreme Court concluded in *Kempke* that a driver's due-process rights were not violated by an inability to subpoena some witnesses for the administrative hearing since they were given the opportunity to examine the certifying officer (usually the arresting officer) there, were permitted to present other evidence there, and did not lose the license until after a more extensive hearing was held in the district court. See 281 Kan. 770, Syl. ¶¶ 5-8. Even so, drivers do have due-process rights with respect to license suspension or revocation, and "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 281 Kan. 770, Syl. ¶¶ 2-3.

In Manzano's case, the license suspension was based on the claim that he refused to take a breath or blood test for alcohol. In a test-refusal case, K.S.A. 2013 Supp. 8-1020(h)(1) limits the scope of the administrative hearing to four issues: (1) whether the officer had reasonable grounds to believe the person was operating a vehicle under the influence of alcohol; (2) whether the person was in custody or arrested for an alcohol or drug related offense; (3) whether the proper notices were given; and (4) whether the person refused to submit or complete a test. That statute also limits the witnesses at the evidentiary hearing to the driver, any law-enforcement officer who signed the certification form (the DC-27 form),

and "one other witness who was present at the time of the issuance of the certification." In addition, the questioning of the law-enforcement officers "shall be restricted to the factual circumstances relied upon in the officer's certification." K.S.A. 2013 Supp. 8-1020(g).

The officers who filled out a DC-27 form in Manzano's case certified that he had been stopped for reckless driving. They also said that they had reasonable grounds to believe that he had been operating his vehicle under the influence of alcohol based on an odor of alcohol coming from him, slurred speech and bloodshot eyes, difficulty communicating, poor balance and coordination, and Manzano's admission that he had consumed some alcohol.

We are fortunate in this case to have a transcript of the administrative hearing. Such transcripts are not routinely prepared, but Manzano's attorney brought a court reporter to the hearing to record it. We have carefully reviewed that transcript. The questions asked by Manzano's counsel at that hearing generally related to "the factual circumstances relied upon in the officer's certification," as required by K.S.A. 2013 Supp. 8-1020(h). Because of the restrictions the hearing officer imposed, however, not all witnesses were allowed to testify and the hearing did not explore the four subjects it could have covered.

The Department of Revenue argues that there was no due-process violation. The Department contends that the only real purpose of the administrative hearing is to raise the issues that are to be determined. That is, in fact, one recognized purpose of the hearing. A driver must first raise an issue at the administrative hearing—even including constitutional challenges—or that issue may not be raised before the district court. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 633-34, 176 P.3d 938 (2008); *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 773-76, 148 P.3d 538 (2006). There is also support for the Department's position in *Kempe*, where the court said that the de novo trial in the district court "cures" procedural defects at the administrative hearing:

"Unlike [state supreme court cases from other states], where no initial administrative hearing was afforded the licensees, Kansas motorists are granted by law an administrative predeprivation hearing and are permitted to present limited

evidence at that hearing. Like [those cases from other states], however, Kansas law provides for a de novo hearing before the district court, which cures any procedural due process defects at the administrative hearing level." 281 Kan. at 799.

Significantly, however, the *Kempke* court's statement that the de novo hearing in the district court cures procedural due-process defects at the administrative hearing came directly after it had noted that Kansas motorists *have* an administrative hearing. And the court again emphasized in the paragraph following the one quoted above that "[l]egislative changes have provided for an extensive hearing at the administrative level" as well as an extension of driving privileges until the de novo trial in the district court. 281 Kan. at 799.

The *Kempke* court did not consider the possibility that the Department of Revenue would provide sham administrative hearings. Whatever one might call it, the hearing provided to Manzano cannot be called a fair or adequate hearing. His attorney's questions were generally appropriate, yet the hearing officer continually interrupted the questioning and ultimately cut it off altogether. Manzano did not have a chance to explore the bases for the statements the law-enforcement officers made on the DC-27 form or time for any possible constitutional challenges Manzano wished to raise at the administrative hearing so that they could be pursued later. In abruptly closing the hearing, the hearing officer did not even provide an opportunity to state issues that Manzano wished to preserve; he simply ended the hearing and moved on to another case.

The Kansas Legislature has carefully crafted a system in which certain witnesses and evidence may be presented at the administrative hearing; more extensive evidence may be presented in the district court's de novo trial. Here, the way the administrative hearing was handled deprived Manzano of the opportunity to meaningfully cross-examine the law-enforcement witnesses, the opportunity to present evidence (including his own testimony), the opportunity to identify potential issues that had to be raised at the administrative hearing, and the opportunity to list those issues to preserve them for later hearing before the district court. In short, the district court properly characterized the hearing as a sham. See

American Heritage Dictionary 1599 (4th ed. 2006) (defining a sham as "[s]omething false or empty that is purported to be genuine").

Our court considered the teaching of *Kempke* in *DeLong v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 454, 252 P.3d 582 (2011). As we said in *DeLong*, "The *Kempke* decision . . . recognizes that *the combination* of the administrative hearing with de novo judicial review provides sufficient constitutional due process in the context of suspension of driving privileges." (Emphasis added.) 45 Kan. App. 2d at 457. Where, as here, the administrative hearing is a sham that does not provide a meaningful opportunity to present evidence, develop the issues, or identify the issues for a later hearing, the driver's due-process rights have been denied.

The Department of Revenue cites *DeLong* in support of its position that Manzano suffered no due-process violation. The Department contends that since Manzano has never lost his license (the suspension doesn't take effect until his court appeal has been completed), he has yet to suffer a deprivation of property and, thus, has no due-process claim. But the facts in *DeLong* are far different than the ones now before us. In *DeLong*, the alleged due-process error was an allegedly erroneous mailing from the Department of Revenue that suggested DeLong's license would be suspended even while her appeal of the suspension continued. That, of course, was incorrect, and DeLong claimed that it caused her concern. Our court found no due-process violation, noting that she had suffered no loss or suspension *based on the claimed violation*. 45 Kan. App. 2d at 457-58. We also noted, of course, that the combination of the administrative hearing and the de novo trial in district court met the requirements of due process. Here, those twin protections have been wiped away by a sham administrative hearing.

Manzano now faces the suspension of his license, and the potential issues on which he might challenge the suspension were neither reasonably explored nor identified at the administrative hearing. The district court's de novo trial is limited to the issues raised at the administrative hearing. In this context, the violation of Manzano's statutory right to a reasonable administrative hearing has violated his constitutional due-process rights as well.

II. *The District Court Properly Dismissed the Department of Revenue's Order Suspending Manzano's Driving Privileges Based on the Denial of Manzano's Due-Process Rights.*

Based on the due-process violation, the district court said that it had two options—remand to the hearing officer or dismissal of the administrative proceeding to suspend Manzano's license. The court concluded that dismissal was the appropriate option:

"One [option] would be to remand the case back to the hearing officer, but that would simply penalize [Manzano] for the administrative hearing officer's actions without any compensation to him for the fees and costs not only for the initial administrative hearing, but also for the costs and fees associated with the appeal of his ruling to the district court. The second option would be to dismiss this case and order a reinstatement of the petitioner's driver's license immediately."

The court then concluded that because the hearing had been "a sham" and the hearing officer had "actively interfered with the rights of petitioner during that hearing," then "the only fair and appropriate order to be entered in this case is for the dismissal" of the administrative proceeding against Manzano's license.

Once the district court has found that an administrative agency's act is invalid under K.S.A. 2013 Supp. 77-621, then K.S.A. 77-622 provides broad authority to grant appropriate relief. K.S.A. 77-622(a) prohibits a damage award unless some other statute authorizes damages, but K.S.A. 77-622(b) broadly authorizes "other appropriate relief" aside from damages, including setting aside the agency action or taking "any other action" that is "appropriate":

"*The court may grant other appropriate relief,* whether mandatory, injunctive or declaratory; preliminary or final; temporary or permanent; equitable or legal. In granting relief, *the court may* order agency action required by law, order agency exercise of discretion required by law, *set aside or modify agency action,* enjoin or stay the effectiveness of agency action, remand the matter for further proceedings, render a declaratory judgment or *take any other action that is authorized and appropriate.*" (Emphasis added.)

K.S.A. 77-622 appears to grant some level of discretion to the district court, offering a range of options and allowing the district court to choose the appropriate one in a specific case. For example, K.S.A. 77-622(b) allows the district court to remand the matter to an administrative agency for further proceedings; our Supreme

Court has said that whether to send a matter back to the agency is a discretionary call. *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 447, 885 P.2d 1233 (1994). We conclude that the district court has some level of discretion in determining what action may be "appropriate" in a given case under K.S.A. 77-622(b).

We next consider whether the district court abused its discretion by ordering dismissal of the administrative proceeding to suspend Manzano's license. In our view, where the administrative hearing officer has altogether failed to provide the opportunity for a meaningful hearing to the driver, a reasonable person could agree with the district court that dismissal is the appropriate remedy.

The Department of Revenue suggests that we instead *affirm* the administrative suspension. It bases this on a stipulation Manzano entered into in as part of a diversion agreement in a separate criminal case arising out of this DUI stop. Manzano responds that the diversion agreement itself provided that the stipulations were made solely for the purpose of that case and that K.S.A. 2013 Supp. 8-1020(t) provides that the "facts found by the hearing officer or by the district court" in a driver's license suspension case "shall be independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence." In the alternative, the Department suggests that we remand the matter to the district court to hold its de novo evidentiary hearing.

We find the Department's suggestions off the mark. First, whatever discretion may be exercised in determining the proper ruling under K.S.A. 77-622 is given to the district court, not us. Second, even if Manzano's factual statement in the diversion agreement were admissible in a separate driver's-license-suspension case, nothing makes it *binding* here, so Manzano could still present other evidence. Thus, the Department's suspension order cannot be affirmed without first providing for an evidentiary hearing. Third, the Department's suggestion that we simply remand the case to the district court for its de novo evidentiary hearing would not solve the problems created by the sham administrative hearing held in Manzano's case—Manzano never had a chance to explore the is-

sues at that administrative hearing or to identify the issues he wanted to preserve for the de novo trial in the district court.

K.S.A. 77-622(b) allows the district court to set aside agency action or to "take any other action that is authorized and appropriate." The district court had the authority in this case to set aside the administrative suspension without providing for any further proceedings. On the facts of this case, we find no abuse of discretion in the district court's decision.

The district court's judgment is therefore affirmed.

\* \* \*

POWELL, J., dissenting: Israel Manzano, prior to his de novo judicial review hearing in the district court, stipulated in his diversion agreement with the prosecutor of his DUI criminal case that he "operated the motor vehicle while under the influence of alcohol, and as a result of the influence of alcohol, [he] . . . was incapable of safely operating the motor vehicle." After he was read his *Miranda* rights by law enforcement and then asked if he understood those rights, he replied, "Fuck you." A couple of minutes later, after law enforcement read him the implied consent warnings, he was asked if he would provide a breath sample, to which his reply was again, "Fuck you." Under such uncontroverted facts, Kansas law mandates that Manzano's driver's license be suspended for 1 year. Because the majority holds otherwise, I dissent.

The majority endorses the district court's order reinstating Manzano's driver's license on the grounds that because he was denied due process at the administrative hearing before the Department of Revenue, the district court did not abuse its discretion in reinstating Manzano's driver's license instead of conducting a de novo hearing. While I agree that Manzano's due process rights were violated, I believe the district court abused its discretion with the remedy it ordered.

First, Manzano was denied due process at the administrative hearing. The majority will get no argument from me that the hearing was, to say the least, hardly the model of an orderly and fair proceeding designed to explore the issues and elicit the truth. But the due process failure was principally due to the fact Manzano

was denied the ability to meaningfully raise issues in order to preserve them for court review.

The majority correctly relies on *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 133 P.3d 104 (2006), for its holding that Manzano's due process rights were violated at the administrative level because our Supreme Court never contemplated that the Department of Revenue would provide a "sham" administrative hearing. However, our Supreme Court in *Kempke* also repeatedly stated that de novo review in the district court "cures *any* procedural due process defects at the administrative hearing level." (Emphasis added.) 281 Kan. at 799. Moreover, it cited with approval several cases from other jurisdictions which held that a complete denial of an administrative hearing did not violate due process because a de novo trial in the district court was available before a licensee's driver's license could be suspended. 281 Kan. at 797-99; see, *e.g.*, *Miles v. Shaw*, 272 Ga. 475, 447-78, 532 S.E.2d 373 (2000) (initial administrative appeal may fall short of due process so long as licensee entitled to subsequent judicial review); *Wollenburg v. Conrad*, 246 Neb. 666, 670-71, 522 N.W.2d 408 (1994) (licensee given due process protection even without hearing at administrative level because license suspension stayed and licensee afforded opportunity for full hearing at district court level); *Department of Transport., Bureau of Traffic Safety v. Quinlan*, 47 Pa. Commw. 214, 218, 408 A.2d 173 (1979) (de novo hearing before district court cures any procedural due process defect resulting from lack of administrative hearing).

We can harmonize our narrow holding that Manzano's due process rights were violated at the administrative hearing in this instance with the broad language contained in *Kempke* that a de novo hearing in the district court prior to a driver's license being suspended cures any due process defects because of our Supreme Court's repeated rulings that issues must be adequately raised at the administrative level before they can be litigated at the de novo hearing in the district court. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 411, 204 P.3d 562 (2009) (party may only argue issues raised at administrative hearing); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 633-34, 176 P.3d 938 (2008) (licensee must

first raise issues below in order to be considered by district court); *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 773-74, 148 P.3d 538 (2006) (subject-matter jurisdiction vested in district court only as to those issues adequately raised below). Moreover, the other jurisdictions cited in *Kempke* provide a truly de novo hearing in court in the sense that the court proceedings are essentially a do over. In Kansas, this is not the case as de novo review of driver's license suspensions in the district court is not really de novo in the traditional sense; it is more like appellate review, except that it allows for a complete new evidentiary record to be produced. See *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 765, 758 P.2d 226 (1988) (true de novo review allows for new trial on facts and issues instead of limiting trial to issues preserved below), *rev. denied* 243 Kan. 777 (1988).

However, adequate preservation of issues does not always require the calling of witnesses, cross-examination of the opposing side's witnesses, or the production of other evidence. For example, in *Martin* our Supreme Court held that constitutional issues had to be raised at the administrative level even though they could not be decided by an administrative tribunal. 285 Kan. at 633-34. But something more than a broad, nonspecific, "mere reservation" of issues is probably required. See *Soza v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 254, 257, 100 P.3d 102 (2004) (Soza's mere "reservation" failed to adequately raise issues), *disapproved on other grounds by Kingsley*, 288 Kan. 390. Parenthetically, I also note that while time limits on hearings are not per se violative of a litigant's due process rights, a litigant is entitled to sufficient time to present his or her case. *In re Marriage of Glenn*, 18 Kan. App. 2d 603, 606-07, 856 P.2d 1348 (while trial court may have obligation to move matters rapidly, litigants entitled to sufficient time to make an orderly presentation of their case), *rev. denied* 253 Kan. 603 (1993).

Second, as to the issue of whether the district court abused its discretion in reinstating Manzano's driver's license, I must dissent for the reasons I stated at the outset. I recognize that our scope of review is quite narrow. However, a district court abuses its discretion when it bases its decision on an error of law, incorrect facts, or, in this instance, when certain facts are completely ignored. See

*State v. Ward,* 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Moreover, while K.S.A. 77-622(b) authorizes the district court to provide "other appropriate relief," such authority is not without some boundaries. Despite the district court's correct conclusion that the administrative hearing violated Manzano's due process rights, I think it was an abuse of discretion and *inappropriate* for the district court to order a remedy without considering evidence that appears to foreclose such a remedy, a remedy that would seem to be greater than what Manzano would have been entitled to had he received due process.

The uncontroverted facts are that prior to the district court hearing, Manzano stipulated that he drove his vehicle while under the influence of alcohol, that such intoxication rendered him unable to safely operate his motor vehicle, that he was given and read a copy of the DC-27 form containing the required informed consent notices, and that he refused to take the breath test. Under K.S.A. 2013 Supp. 8-1014, Kansas law requires that Manzano's driver's license be suspended for 1 year given these uncontroverted facts.

There is nothing in Kansas law which prohibits the district court from considering these stipulations, just a prohibition on utilizing findings made in the criminal case. K.S.A. 2013 Supp. 8-1020(t) states:

"The facts found by the hearing officer or by the district court upon a petition for review shall be independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence. The disposition of those criminal charges shall not affect the suspension or suspension and restriction to be imposed under this section."

A diversion agreement is simply a contract between the prosecutor and a defendant. *State v. Tims,* 49 Kan. App. 2d 845, 854, 317 P.3d 115 (2014), *petition for rev. filed* February 3, 2014. It is not an adjudication of a criminal case, nor does it contain any findings by a court or jury which a district court can adopt. 49 Kan App. 2d at 854. Manzano's diversion agreement contains admissions against interest or stipulations of certain *facts,* facts that are highly relevant to the issue of whether Manzano's driver's license was properly suspended. Manzano is bound by those stipulations. *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268,

269, 202 P.3d 7 (2009). Moreover, the fact that the diversion agreement contains language that it cannot be used for any other purpose is immaterial because neither the Department of Revenue nor the district court was a party to the agreement and, therefore, are not bound by such restrictions. See generally *Swanson v. Fields*, 814 F. Supp. 1007, 1014-15 (D. Kan. 1993) (defendant's stipulation to contrary facts in diversion agreement bar subsequent 42 U.S.C. § 1983 civil action); see also *Martin*, 285 Kan. at 646 (illegally obtained evidence admissible in driver's license revocation hearings).

The district court should have considered the diversion agreement. Because there is nothing in the record to indicate it did so, I would reverse the district court, vacate its order, and remand for a de novo hearing as required by K.S.A. 2013 Supp. 8-1020(p).