No. 126,435

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BOARD OF RILEY COUNTY COMMISSIONERS,
*Appellant/Cross-appellee,*

v.

KANSAS HISTORICAL SOCIETY, JENNIE CHINN, STATE HISTORIC
PRESERVATION OFFICER, and KANSAS HISTORIC SITES BOARD OF REVIEW,
*Appellees/Cross-appellants.*

SYLLABUS BY THE COURT

1.

A case is moot when the actual controversy has ended and any judgment that could be entered would be ineffectual for any purpose and would not affect any of the parties' rights. A case is not moot when a party articulates a substantial interest that would be impaired by dismissal.

2.

Agency decisions must be based on known rules and standards.

3.

Unless a statute provides otherwise, all Kansas rules and regulations must be adopted using the procedures in the Kansas Rules and Regulations Filing Act, K.S.A. 77-415 et seq.

1

4.

When a rule or regulation must be adopted using the process outlined in the Kansas Rules and Regulations Filing Act but its adoption does not follow that procedure, the rule or regulation has no force or effect.

5.

The Kansas Judicial Review Act provides broad authority to a district court to order appropriate relief when an agency has exceeded its legal authority. Appellate courts will set the district court's remedy aside only when that remedy results from an abuse of discretion.

Appeal from Riley District Court; W. LEE FOWLER, judge. Oral argument held February 19, 2025. Opinion filed December 19, 2025. Affirmed.

*Bryant Parker*, deputy county counselor, and *Clancy Holeman*, county counselor, for appellant/cross-appellee.

*Whitney L. Casement*, of Stevens & Brand, L.L.P., of Topeka, for appellees/cross-appellants.

Before WARNER, C.J., GARDNER and HURST, JJ.

WARNER, C.J.: State agencies are governmental actors, and the standards they adopt carry the force of law. For this reason, Kansas statutes generally require an agency to give the public notice of any rule they intend to adopt and to allow an opportunity for interested members of the public to provide feedback before a proposed rule becomes law. This notice-and-comment rulemaking process applies to nearly all agencies for nearly all agency rules—from professional licensing regulations to environmental restrictions to securities laws. The process helps ensure that members of the public are not subjected to agency rules and regulations whose existence is known only by agency personnel.

This case tests the extent to which this notice-and-comment process applies to agencies charged with preserving and protecting historic property in this state. The former First Christian Church building in downtown Manhattan has been the subject of much discussion in the Riley County government for nearly two decades. The County, which purchased the church in 2020, would like to tear it down to make way for modern government offices. After the County bought the church, several residents sought to preserve it as a historic building and nominated the church for listing on the National Historic Register of Places (which we call the National Register). In August 2021, the Kansas Historic Sites Board of Review (a state agency) recommended that the National Park Service—which makes the final decision regarding the National Register—include the church on that list. The church has been listed on the National Register since March 2022.

This case is an administrative appeal by the County against the Board, as well as the Kansas Historical Society and its agency head (the State Historic Preservation Officer, or SHPO), challenging the Board's decision. But the issues only tangentially concern the church's listing on the National Register. Instead, they concern the process the Board used and the standards it applied to also list the property on the Register of Historic Kansas Places (which we call the Kansas Register). The County asserts that the Historical Society had not adopted any rules or regulations defining when and how property could be placed on the Kansas Register. Thus, the County and the public had no meaningful notice of what the Board was considering or how the Board was carrying out its duties.

The state agencies assert that these concerns have little, if any, practical effect because Kansas law states that any building listed on the National Register will also be listed on the Kansas Register. In other words, the Board argues that the County's concerns have been rendered moot by the church's federal historic protections.

There is some validity to each side's position.

Kansas law requires state agencies tasked with developing standards that will be applied to the public—like the Board here—to undergo certain steps to promulgate those standards through rules and regulations. These steps notify the public how these rules will be applied, so everyone understands the applicable administrative standards. The State Historical Society did not undergo these steps to adopt rules on how it places buildings on the Kansas Register, so it did not have administrative authority to list the church on that register in August 2021. That listing was premature.

But other than filing this declaratory-judgment action, the County took no steps between August 2021 and March 2022 to move forward with its development plans. And after the church was listed on the National Register in 2022, Kansas law required the Board to also list the property on the Kansas Register—which it did. So regardless of the legal shortcomings before the church received federal protection, the County has not shown that it suffered any real harm by the church's earlier listing on the Kansas Register.

Thus, as the district court ruled, the Board erred when it prematurely listed the church on the Kansas Register. But given the subsequent history of this case, we agree with the district court that the listing did not harm the County in a meaningful way, as the relief the County requests is not available. We affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The church at the heart of this case is a limestone building constructed in 1908, with additions in 1938 and 1962. It is part of a "Courthouse Plaza" in downtown Manhattan that includes the Riley County Courthouse, Carnegie Library, and the County's office complex.

The County had expressed interest in purchasing the church since at least 2007 to expand the County's downtown footprint. Though the County previously considered remodeling the church, it determined the office potential was limited and instead sought to acquire the church to raze the structure and construct a new office building. The County ultimately purchased the church in 2020.

*The Church's Nomination for Historic Preservation*

Sparked in part by talk of demolishing the church, the Riley County Preservation Alliance—a group of community members interested in the preservation of historic properties—submitted a form to the Historical Society in May 2021, nominating the church for the National Register. This form did not mention the Kansas Register.

After receiving this form, the Deputy SHPO informed the County that the church would be considered by the Board "for nomination to the National Register of Historic Places and the Register of Historic Kansas Places (state register)" on August 7, 2021.

The Riley County Commission consists of three commissioners. One commissioner—Kathryn Focke—wrote a letter to the Deputy SHPO in support of the church's nomination to the National Register. The other two commissioners wrote a letter to the Deputy SHPO opposing the nomination.

The day before the hearing, the County's attorney wrote a letter to the Deputy SHPO, expressing concerns that there were no administrative rules or regulations concerning how a property could be listed on the Kansas Register. The attorney noted that the only information he could ascertain about that process was a statement on the Historical Society's website that "[t]he same general criteria [used for the National Register] are used to assess the eligibility of a property for inclusion in the state register,

but more flexibility is allowed in the interpretation of the criteria for eligibility." Thus, according to the attorney, the County would be required to guess as to what amount of flexibility the Board would use to evaluate the nomination for the Kansas Register.

At the hearing, the Board heard from several people, including the attorney for the County, county commissioners, and members of the public. The discussion at the hearing largely focused on the impact a potential nomination would have on the County's ability to demolish the church. Various members of the public, Commissioner Focke, and a representative of the Riley County Preservation Alliance all spoke about the need to save the church from demolition.

The Deputy SHPO explained that while a property being listed on the Kansas or National Register subjects the property to the state preservation law, "it does not prevent [the church] from being demolished in the future." But including the church on either list would mean that before the County could tear down the structure, it "would have to hold a hearing and determine if there are any feasible or prudent alternatives to the demolition before proceeding." The Deputy SHPO clarified, however, that it does not consider any future development plans when evaluating a nomination to the National and Kansas Registers. Instead, the Board merely determines whether the nomination "meets the criteria for listing in the register."

The Deputy SHPO explained that the National Park Service disseminates the criteria for the National Register. He noted that the Board has used these criteria for all nominations to both the National and Kansas Registers for almost 50 years. But while the Board strictly adheres to the federal guidelines for nominations to the National Register, it has more flexibility when deciding whether to list a property on the Kansas Register.

As part of this discussion, the County's attorney asked for clarification about the relationship between the two registers and the process for placing a property on the

Kansas Register. The attorney asked if the property "automatically" went on the Kansas Register if it was placed on the National Register. The Deputy SHPO responded that if the Board approved the church's nomination to the National Register, the church would also "go on the state register upon their vote of approval."

At the end of the hearing, the Board agreed to recommend that the church be listed on the National Register. As a result, the Board submitted the nomination to the National Park Service. The Historical Society then listed the church on the Kansas Register on August 17, 2021. The National Park Service ultimately approved listing the church on the National Register approximately seven months later on March 10, 2022.

*Administrative Appeal from the Board's Decision to the District Court*

In September 2021—after the church was listed on the Kansas Register but before the National Park Service approved it for federal listing—the County (specifically, the Board of Riley County Commissioners) petitioned the district court for judicial review of the Board's decision under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The County argued that the Deputy SHPO, the Board, and the Historical Society had exceeded their legal authority by placing the church on the Kansas Register. The County advocated that this listing should be set aside because the Historical Society never adopted formal rules or regulations outlining how or when a property could be listed on the Kansas Register. The County did not challenge the Board's decision to recommend the Church be listed on the National Register.

In response, the state agencies argued that the church had only been nominated for the National Register and asserted the Board only considered the federal criteria for evaluating historic properties when considering that application. They thus asserted that any flexibility the Board might use in other cases was irrelevant. The County responded in its reply that if the nomination form only applied to the National Register, the Board

had no authority to list the church on the Kansas Register before the National Park Service approved that nomination.

The district court held a hearing on the County's petition in March 2023, roughly a year after the church had been approved for and placed on the National Register. The court later made several rulings that are relevant to the parties' arguments on appeal:

- The court found that the Board complied with the requirements for approving the nomination of the church for the National Register and observed that the County never challenged the federal nomination.

- The court found that before the National Park Service listed the church on the National Register and there were no formal regulations governing the procedure to list a property on the Kansas Register, the Board "had no statutory or regulatory authority for listing [it] on the State Register." Thus, that state listing was "premature and therefore illegal" from August 17, 2021, through March 10, 2022.

- The court concluded, based on K.S.A. 75-2721(a)(1), that when the National Park Service approved the church's listing on the National Register on March 10, 2022, Kansas law automatically required the church to be listed on the Kansas Register. Thus, the Historical Society did have authority—in fact, was required—to list the church on the Kansas Register as of that date.

Based on these findings and conclusions, the district court vacated the Board's decision to list the church on the Kansas Register from August 17, 2021, through March 10, 2022. But the court ultimately denied the County's request for relief because the eventual listing on the National Register effectively cured any previous legal or procedural defect for the state listing.

*The Case Before Us*

The County now appeals the district court's decision. The agencies cross-appeal the district court's finding that the Board lacked legal authority to list the church on the Kansas Register in August 2021. In their respective briefs, the parties raise several issues:

- The County again asserts the Board could not list the church on the Kansas Register because it had only been nominated for the National Register. The County also argues that because the Historical Society had not promulgated any formal regulations to place the church on the Kansas Register, the Board did not have authority to bestow that status on the church in August 2021. And in light of that deficiency, the County asserts that we should order the Board to remedy the harm done to the County. In particular, the County argues that we should compel the Board to seek removal of the church from both the state and federal listings.

- The Board asserts the district court erred when it found the Board lacked legal authority to list the church on the Kansas Register. It asserts that Kansas law requires properties listed on the National Register to also be listed on the Kansas Register and that it only considered the federal standards when it rendered its decision. The Board also argues that all these claims have been rendered moot by the church's listing on the National Register, as that listing compels a parallel listing on the Kansas Register.

This appeal has been delayed for reasons largely outside the parties' and the court's control, ranging from systemic technological challenges during the briefing process to intervening caselaw potentially redefining Kansas courts' analysis of mootness. But these challenges are now in the rearview. After carefully considering the parties' arguments and our governing statutes and caselaw, we affirm the district court's decision.

9

For nearly 50 years, Kansas law has explicitly recognized the importance of "the historical, architectural, archeological and cultural heritage" of our state, averring that "its preservation and maintenance should be among the highest priorities of government." K.S.A. 75-2715. Out of respect for this heritage, the Kansas Legislature enacted a "comprehensive program of historic preservation . . . to foster and promote the conservation and use of historic property for the [public's] education, inspiration, pleasure and enrichment." K.S.A. 75-2715.

The state agencies involved in this appeal—the Historical Society and the Board—have interconnected charges relating to Kansas' historic preservation efforts.

- The Historical Society's powers and duties are largely contained in K.S.A. 75-2721. Relevant here, this statute grants the Historical Society the power to "[p]repare and maintain a state register of historic places, which shall include all those listed on the national register of historic places." K.S.A. 75-2721(a)(2). The statute further states that the Historical Society "shall adopt standards for the listing and maintenance of historic properties on the state register consistent with relevant federal standards for preservation and care of historic properties." K.S.A. 75-2721(a)(2). And the "state historic preservation officer shall adopt rules and regulations to implement and administer" these provisions. K.S.A. 75-2721(b).

- The Board has "the power and duty" to "approve nominations to the state and national registers of historic places." K.S.A. 2024 Supp. 75-2720(a)(1). It may also "[a]pprove the removal of properties from the state register" and "[r]ecommend the removal of properties from the national register." K.S.A. 2024 Supp. 75-2720(a)(4), (5).

10

Including a property on the National or Kansas Register has several practical consequences. The owner of the registered property may become eligible for financial incentives, such as preservation grants or rehabilitation tax credits. See, e.g., K.S.A. 75-2729 (discussing historic preservation grants); K.S.A. 2024 Supp. 79-32,211 (state income tax credits for qualified rehabilitation expenses for properties listed on the Kansas Register); see also United States National Park Service, National Register of Historic Places, How to List a Property, available at https://www.nps.gov/subjects/nationalregister/how-to-list-a-property.htm.

Designation as a historic site also limits a governmental entity's ability to exercise its eminent-domain powers or take actions that otherwise change the character of the property. See K.S.A. 75-2714. Most relevant here, K.S.A. 75-2724(a) mandates an investigation-and-approval process before properties on the National or Kansas Register may be significantly altered or destroyed. This statute requires a property owner who wishes to demolish their historic property to notify the SHPO, so that person has "an opportunity to investigate and comment upon the proposed [development] project." K.S.A. 75-2724(a). The SHPO may then "solicit the advice and recommendations of the [Board] with respect to such project and may direct that a public hearing or hearings be held thereon." K.S.A. 75-2724(a). These public hearings must take place within 60 days of notice of the proposed project from the County to the SHPO. K.S.A. 75-2724(a).

If the SHPO determines that the proposed project will damage or destroy any historic property included in the National or State Registers, the project cannot proceed until the proponent demonstrates "that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to such historic property resulting from such use." K.S.A. 75-2724(a)(1).

Returning to the facts before us, the County does not challenge the Board's decision to recommend that the church be included on the National Register or the

11

process the Board used to reach that decision. Nor does it purport to challenge the National Park Service's later decision to include the church on that register. And no one disputes that once a property is listed on the National Register, K.S.A. 75-2721(a)(2) requires that the property also be included on the Kansas Register. Instead, the issues in this case solely involve the legality and effect of the Board's decision to list the church on the Kansas Register *before the National Park Service made its determination*.

These issues primarily concern the Board's legal authority to list the church on the Kansas Register in August 2021—about seven months before that property received federal historic protection—and the effect of this earlier listing on the County. But before analyzing these matters, we must consider whether the church's current listing on the National Register has rendered the other questions in this appeal moot.

1. *The County has demonstrated that the case before us is not moot, and even if it were, an exception to the mootness doctrine warrants our continued review.*

Unlike the legislative and executive branches, Kansas courts do not have the constitutional authority to issue advisory opinions. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008). Instead, courts are called on to decide concrete questions that will have an actual impact on the parties before us—to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.'" *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]).

As a corollary to this principle, even if a court case began with an active dispute, courts will generally not continue to hear the case if the issues presented become "moot." *Roat*, 311 Kan. at 584.

Kansas courts use a burden-shifting framework to assess whether a moot case should be dismissed or whether judicial review can go forward. A party can seek dismissal by showing that the actual controversy in the case has ended and that any judgment that could be entered "'would be ineffectual for any purpose'" and "'would not impact any of the parties' rights.'" 311 Kan. at 584. The party asserting that issues in a case have become moot must make a prima-facie showing that the actual controversy in the case has ended. See 311 Kan. 581, Syl. ¶ 6. The burden then shifts to the party bringing the claim, who must "show the existence of a substantial interest that would be impaired by dismissal" or convince this court that "an exception to the mootness doctrine applies." 311 Kan. 581, Syl. ¶ 7.

After the oral argument in this case, the Kansas Supreme Court issued its opinion in *State v. Phipps*, 320 Kan. 616, 570 P.3d 1240 (2025), *reh. granted* October 17, 2025, which purported to overrule *Roat*'s mootness analysis and replace that burden-shifting framework with an absolute jurisdictional bar against hearing moot cases. Recognizing the *Phipps* analysis might change the parties' arguments and the court's authority in this case, this court initially refrained from issuing a decision here until *Phipps* became final precedent. But the Kansas Supreme Court has now granted rehearing in *Phipps* and has ordered supplemental briefing on the issues in that case, effectively suspending its previous decision. See Supreme Court Rule 7.06(c) (2025 Kan. S. Ct. R. at 51). Rather than delaying longer, we will proceed under *Roat*'s governing framework.

The agencies claim that the arguments raised in this case are moot because when the National Park Service listed the church on the National Register, Kansas law dictated that it also be listed on the Kansas Register. See K.S.A. 75-2721(a)(2) (stating the Kansas Register "shall include all those [properties] listed on the national register of historic places"). They argue that even if the County is correct that the church was listed prematurely, any legal deficiency in the earlier listing was cured when the church was

listed on the National Register in March 2022. They thus claim that a decision analyzing the County's arguments would not have any practical effect, as the church is currently subject to historic protections.

The County disagrees, arguing that it is claiming harm for the period from August 2021 through March 2022. It notes that the district court found that the Board did not have legal authority to list the church in the Kansas Register during that period. The County argues that it suffered a legal wrong as a result of the Board's action. The County also notes that the redress it is seeking—requesting the National Park Service to remove the church from the National Register—remains available even though the church currently enjoys both federal and state historic protection.

The district court found that the County had suffered a legal injury between August 2021 and March 2022. But it also found that the County was not entitled to the relief it requested, concluding the church was now properly listed on both the Kansas and National Registers. Although the agencies construe this latter finding as a determination that the case was moot, the court did not dismiss the action on mootness grounds. Instead, it found that the County had not shown it was entitled to the relief it sought.

The Kansas Supreme Court has previously cautioned that Kansas courts "do not have the power to correct abstract or theoretical wrongs, only real ones." *Sierra Club v. Stanek*, 317 Kan. 358, 363, 529 P.3d 1271 (2023). Under this principle, the Supreme Court found that a challenge to an earlier administrative hog-farming permit was rendered moot when a new permit was issued, even when challenges may exist under the new permit, because the earlier classification—the classification that the litigants challenged—was no longer effective. 317 Kan. at 363. The court likened the claims concerning the defunct permit to "walking-dead arguments." 317 Kan. at 363.

The issues before us have some similarities to *Sierra Club*'s mooted permitting challenges. The County contests the legality of the decision to list the church on the Kansas Register from August 2021 through March 2022. It acknowledges that the Board has the authority—in fact, has the duty—to list the church on the Kansas Register now that it has received federal historic protection. And even if the church were *only* listed on the National Register, the requirements in K.S.A. 75-2724 apply to historic properties listed there. Under these circumstances, we conclude that the agencies have made a prima-facie showing that the actual controversy here has ended. See *Roat*, 311 Kan. 581, Syl. ¶ 6.

But unlike in *Sierra Club*, we find that the County has demonstrated that it continues to raise "a substantial interest that would be impaired by dismissal." *Roat*, 311 Kan. 581, Syl. ¶ 7. As the Supreme Court has recognized, a mootness analysis must consider whether "an appellate judgment on the merits would have meaningful consequences for any purpose, including future implications." 311 Kan. at 592-93. As the County notes, the Kansas Judicial Review Act provides a mechanism for a court to remedy an agency's legal error, even if the only result is a legal declaration of the parties' respective rights and responsibilities. See K.S.A. 77-621(c)(4); K.S.A. 77-622(b). The district court effectively entered such an order here. We cannot say that our review would have no meaningful consequences for that declaratory judgment.

We also note that the County asserts that it was unable to move forward with its development plans in 2021 and now has lost that opportunity. Regardless of its ultimate merits, this assertion is different from the moot claims in *Sierra Club*, which challenged the administrative decision to issue permits that were no longer in effect. On its face, the County claims that its rights were meaningfully impaired by the Board's action and asserts that it continues to suffer that legal injury today.

And even if the case were moot, "an exception to the mootness doctrine" would apply. *Roat*, 311 Kan. 581, Syl. ¶ 7. As the facts of this case demonstrate, the issues raised here—whether current statutes and regulations permit the Board to list a property on the Kansas Register before it has been listed on the National Register and what remedy, if any, exists for such a listing—warrant continued review because they raise questions of public importance that are "capable of repetition." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996). And these issues primarily arise in the window of time while a nomination for federal protection is pending; thus, these issues would otherwise likely evade appellate review. *Duffy*, 259 Kan. at 504.

We turn to those issues now.

2. *Because the Historical Society has not defined how a property may be listed on the Kansas Register through any rules or regulations, the Board did not have the legal authority to include the church on that list from August 2021 through March 2022.*

As we have noted, the Board determined at its August 2021 hearing that the church would be immediately listed on the Kansas Register, while the federal nomination would be forwarded to the National Park Service for its consideration. When the County asked what criteria the Board used to include the church on the state register, the Deputy SHPO pointed the County to a statement on the Historical Society's website: "The same general criteria [used for the National Register] are used to assess the eligibility of a property for inclusion in the state register, but more flexibility is allowed in the interpretation of the criteria for eligibility." According to the agencies, the Historical Society has used this approach for roughly 50 years to determine whether a property should receive state historic protection. The parties agree that this approach has never been promulgated as a formal regulation.

The district court found that this statement on the website did not have the force of law, and—in the absence of any formal regulation—could not be a governing standard on

16

which the Board relied. The court thus found that the Board exceeded its authority when it placed the church on the Kansas Register from August 2021 through March 2022. The agencies cross-appeal this conclusion, arguing the practice of using the federal regulations to determine state historic preservation makes sense, given that all properties listed on the National Register must also be listed on the Kansas Register. See K.S.A. 75-2721(a)(2).

But the agencies' argument misses the mark. The question before us is not whether the substance of the Historical Society's legal standard was reasonable, but whether that agency had properly adopted and provided the public with notice of that standard.

K.S.A. 75-2721 is the organic act that defines the Historical Society's functions. These functions include, among other things, preparation and maintenance of the Kansas Register. K.S.A. 75-2721(a)(2). The statute directs that the Historical Society "shall adopt standards for the listing and maintenance of historic properties on the state register consistent with relevant federal standards for preservation and care of historic properties." K.S.A. 75-2721(a)(2). And the statute states the SHPO "shall adopt rules and regulations to implement and administer" this provision. K.S.A. 75-2721(b).

Unless a statute provides otherwise, all Kansas rules and regulations must be adopted using the procedures in the Kansas Rules and Regulations Filing Act. See K.S.A. 2024 Supp. 77-415(b)(1). Rules and regulations promulgated under the Act through this process go through an extensive process of public vetting. A proposed rule or regulation must first be submitted for approval by the Secretary of Administration, the Attorney General, and the Budget Director to determine grammatical, legal, and fiscal compliance. See K.S.A. 2024 Supp. 77-420. Once the regulation has been approved by these entities, the agency must give the public notice of the policy or procedure it intends to adopt and an opportunity to comment on the policy. The agency must post the proposed regulation in the Kansas Register (that is, the Kansas *Administrative* Register, not to be confused

17

with the Kansas *Historical* Register), including both the proposed regulation itself and a summary of that rule, along with statements regarding the regulation's economic and environmental impact, and allow the public at least 60 days to submit comments and feedback on that policy. K.S.A. 2024 Supp. 77-421(a)(1).

Within that comment period, the agency must hold a hearing to allow members of the public a "reasonable opportunity to present their views or arguments on adoption of the rule and regulation, either orally or in writing." K.S.A. 2024 Supp. 77-421(b)(1). And after the hearing, the agency must prepare "a concise statement of the principal reasons for adopting the rule and regulation" in either its proposed or an amended form. K.S.A. 2024 Supp. 77-421(b)(1).

This entire process is commonly described as notice-and-comment rulemaking. K.S.A. 77-425 unequivocally states that when "[a]ny rule and regulation [is] not filed and published as required by" the Rules and Regulations Filing Act, that rule or regulation "shall be of no force or effect." In other words, if state law requires an agency to follow the notice-and-comment rulemaking requirements of the Act and the agency adopts a policy without following those procedures, the policy is void. *Bruns v. Kansas State Bd. of Technical Professions*, 255 Kan. 728, 734, 877 P.2d 391 (1994); *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 238, 305 P.3d 729 (2013), *rev. denied* 299 Kan. 1274 (2014).

The agencies acknowledge that the Historical Society did not undertake any of these procedures when establishing the criteria for placing a property on the Kansas Register. But they argue that the Historical Society did not need to go through the formal rulemaking process since it was merely relying on the federal historic-preservation regulations in the state context—a practice it describes as consistent with the direction of K.S.A. 75-2721(a)(2) that the policies adopted be "consistent with relevant federal standards for preservation and care of historic properties." The agencies also assert that

18

the statement on the website that the Board uses greater flexibility when applying the federal regulations in the state context did not adopt a new standard; instead, it described an "internal procedure."

We do not find these arguments compelling. The Historical Society was empowered to adopt standards for placing properties on the Kansas Register, and K.S.A. 75-2721(b) directed that this charge should be done through adopting rules and regulations. The standards the Historical Society and Board use to determine when a property should receive state historic protection fall squarely within the definition of a rule or regulation—"a standard, requirement or other policy of general application that has the force and effect of law . . . issued or adopted by a state agency to implement or interpret legislation." K.S.A. 2024 Supp. 77-415(c)(5). And all rules or regulations must follow the procedure outlined in the Rules and Regulations Filing Act unless a statute exempts an agency from that process. K.S.A. 2024 Supp. 77-415(b)(1). The agencies have not pointed to any statute that exempts the Historical Society from this procedure, and we have found none.

Indeed, it is telling that the federal standards on which the Historical Society relies were promulgated *in a federal regulation*. See 36 C.F.R. § 60.4. While the agencies' reliance on those standards may be generally consistent with their statutory charge in K.S.A. 75-2721(a)(2), broad statutory authority to adopt regulations is not the same as formally adopting a standard that will be applied whenever a property is being considered for state historic protection. And the decision to adopt those standards is nevertheless a policy that must be promulgated through formal rulemaking. Adopting and incorporating an existing federal standard is nevertheless adopting a "standard . . . of general application that has the force and effect of law." K.S.A. 2024 Supp. 77-415(c)(5).

We similarly are unpersuaded by the agencies' alternative argument that the statement on the Historical Society's website that it uses "more flexibility" in the

application of the federal regulations in the state context is an internal procedure. The Historical Society and Board use this standard to determine whether a property has historic significance that should be protected. While Kansas law recognizes that an agency "may provide guidance or information to the public, describing any agency policy or statutory or regulatory requirement," it unequivocally states that "no such guidance or information may give rise to any legal right or duty or be treated as authority for any standard, requirement or policy reflected therein." K.S.A. 2024 Supp. 77-415(b)(2)(D). If the standard articulated on the Historical Society's website was what the agencies intended to use to govern the determination of what should be listed on the Kansas Register, Kansas law required that standard to be formally adopted through notice-and-comment rulemaking. The district court correctly found that the agencies exceeded their legal authority when they applied a standard that was unvetted through this process.

Before turning to the final issue in this appeal—the County's requested remedy—we note that the County has offered a separate reason why it believes the Board lacked the ability to list the church on the Kansas Register: That the original nomination form only stated the proponents were seeking to list the church on the National Register (and did not mention the Kansas Register at all). Because we have found the Board did not have the legal authority to list the church on the Kansas Register at that time, we need not discuss this contention in great detail. We note, however, that the Board informed the County weeks before the hearing that it would be considering the church for both state and federal protection. Thus, everyone received notice of that action well in advance, and the parties had an opportunity to address those issues at the hearing in August 2021. Accord *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006) (allowing the State to charge a different crime before trial as long as the substantial rights of the defendant are not prejudiced).

Agency decisions must be based on known rules and standards so members of the public are not "'subjected to agency rules and regulations whose existence is known only

20

by agency personnel.'" *Schneider v. Kansas Securities Comm'r*, 54 Kan. App. 2d 122, 140, 397 P.3d 1227 (2017) (quoting *Clark v. Ivy*, 240 Kan. 195, 206, 727 P.2d 493 [1986]), *rev. denied* 307 Kan. 988 (2018). The Board exceeded its legal authority when it relied on a standard that had not been adopted through the formal rulemaking process. Even if the agencies used the same policy for the last 50 years, as they assert in this appeal, this historic record does not supplant the process of notice and public vetting in the Rules and Regulations Filing Act. The district court correctly ruled the County had shown that the agencies "erroneously interpreted or applied the law" under the Kansas Judicial Review Act, K.S.A. 77-621(c)(4), because the Board did not have legal authority to place the church on the Kansas Register before March 2022.

3. *The district court did not err in declining to grant the County its requested relief.*

Although we have found that the agencies acted without legal authority when they listed the church on the Kansas Register before it was placed on the federal counterpart, our analysis does not end there. The district court found that even though the agencies erroneously interpreted and applied the law under K.S.A. 77-621(c)(4), the County had not shown that it was entitled to the relief it requested—beyond that finding—to remedy that legal error. The County challenges this ruling on appeal.

Once more, this argument requires some context. The County asserts that it was harmed when the agencies listed the church as having historic protections in August 2021 because those protections prevented the County from moving forward with its development plans (which included razing the church building). But the County has not shown that it actually would have demolished the church in the seven months between August 2021 and March 2022 (an assertion we would find practically questionable since the church was being considered for federal historic protection during that time). Nor did the County seek monetary damages caused by this lost opportunity or by the increased administrative procedure it must undergo to move forward with those plans now. Instead,

it requested the district court to compel the Board to remove the church from the Kansas Register and to strip the church of any historic protections.

The Kansas Judicial Review Act provides "broad authority" to a district court to order appropriate relief when an agency has exceeded its legal authority under K.S.A. 77-621. *Manzano v. Kansas Dept. of Revenue*, 50 Kan. App. 2d 263, 273, 324 P.3d 321 (2014). The KJRA recognizes that a court has discretion to order monetary damages when those damages are otherwise legally permissible and to provide legal or equitable relief, including through injunctions and declaratory relief. K.S.A. 77-622(b). We will only set the district court's remedy aside when it results from an abuse of discretion. See 50 Kan. App. 2d at 273-74. A court abuses its discretion when it issues an order with which no reasonable judicial officer would agree or enters a decision based on a factual or legal error. See *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022).

The district court in this case entered a declarative judgment, finding the agencies had exceeded their legal authority when they included the church on the Kansas Register in August 2021. But it declined to give the County any of the other relief it sought, noting that no one challenged the church's federal historic designation—a designation that automatically triggers listing in the Kansas Register.

We do not find this decision unreasonable. As the agencies point out, as long as the church is listed in the National Register, Kansas law requires that it also be listed in the Kansas Register. See K.S.A. 75-2721(a)(2). Thus, the agencies cannot remove the church from the state register and comply with their statutory obligations.

The County argues that the district court could have ordered the Board to request that the National Park Service remove the church from the federal register, thus clearing the way for removing the state historic protections. It is true that Kansas law vests the Board with the authority to recommend removal of properties from the National Register.

See K.S.A. 2024 Supp. 75-2720(a)(5). But as the district court noted in its ruling, the County has never argued that the church does not warrant federal historic protection. We find the County's assertion that the National Park Service would honor such a request to be based largely on speculation. And even if the County could demonstrate that request would be effective, the result would deprive the public of the cultural and historic heritage that Kansas historic preservation laws seek to foster. K.S.A. 75-2715. In other words, the County's proposed remedy would punish the public for the agencies' legal shortcoming.

The district court did not err by declining to order the agencies to remove the church from the Kansas Register or recommend its removal from the National Register. We affirm the district court's judgment.

Affirmed.